MANHATTAN SHIRT CO., Appellant,

v.

Andrew D. M. TOMLINSON, Trustee in Bankruptcy of the Estate of N. Porter Mercantile Co., Bankrupt, Appellee.

No. 18697.

United States Court of Appeals
Ninth Circuit.

Jan. 28, 1964.

Oscar C. Rauch, Phoenix, Ariz., Hahn, Hessen, Margolis & Ryan, Harry A. Margolis and Julius J. Abeson, New York City, Dinkelspiel & Dinkelspiel and Harold A. Block, San Francisco, Cal., for appellant.

Allan K. Perry, Phoenix, Ariz., for appellee.

Before BARNES, HAMLIN and MERRILL, Circuit Judges.

HAMLIN, Circuit Judge.

Manhattan Shirt Company, appellant herein, was a creditor of the N. Porter Mercantile Co. which was adjudicated a bankrupt in the United States District Court for the District of Arizona. In the proceedings before the referee in bankruptcy in Phoenix, Arizona, after the adjudication of said bankruptcy appellant complains that at the first meeting of creditors the referee acted improperly in the selection of a creditors' committee and in the selection of a trustee. The record shows that within a very few days after the selection of the creditors' committee and the trustee, the assets of the bankrupt were sold for cash. The record also shows that there was no objection by the creditors to the confirmation of this sale by the referee, and in this appeal no complaint is made by appellant of such sale or of any action by the creditors' committee or of the trustee.

Appellant here only contends that the provisions of section 44 of the Bankruptcy Act, 52 Stat. 860 (1938), as amended, 11 U.S.C. § 72 (1958), were not followed by the referee when the creditors' committee and the trustee were named.

Section 44 provides in part as follows:

"(a) The creditors of a bankrupt * * * shall, at the first meeting of creditors after the adjudication, * * * appoint a trustee or three trustees of such estate. If the creditors do not appoint a trustee or if the trustee so appointed fails to qualify as herein provided, the court shall make the appointment. * * *

"(b) Such creditors may, at their first meeting, also appoint a committee of not less than three creditors, which committee may consult and advise with the trustee in connection with the administration of the estate, make recommendations to the trustee in the performance of his duties and submit to the court any question affecting the administration of the estate."

Section 45 provides in part as follows:

"Receivers and trustees shall be (1) individuals who are competent to perform their duties and who reside or have an office in the judicial district within which they are appointed * * *."

Section 2(a) (17), 52 Stat. 842 (1938), as amended, 11 U.S.C. § 11(a) (17) (1958), provides that the court—i. e., the judge or referee—has power to "approve the appointment of trustees by creditors or appoint trustees when creditors fail so to do * * *."

It appears that at the first meeting of creditors the referee and counsel for appellant were, to put it mildly, not in accord. The referee apparently felt that there had been some improper solicitation by an interim creditors' committee and that such counsel, who was a New York lawyer not admitted to practice in Arizona, was in some way responsible therefor.

As shown by the proceedings which are partially set out in the margin,[1] the referee asked for volunteers to serve on a creditors' committee. Counsel apparently did not like that procedure and nominated a creditors' committee of six persons. After some further discussion the referee called for volunteers to serve on the committee and he thereupon appointed some fifteen persons who were present and who volunteered and who were either creditors or who represented creditors. Included in this creditors'

---

1. "THE REFEREE: The next matter will be the matter of appointing a creditors committee. I will ask for volunteers to serve on a creditors committee.

"MR. MARGOLIS: * * * Since the creditors are the ones that appoint the committee, * * * [and] since I am an attorney for James Talcott, I am a creditor appearing here. I would like to nominate a croditors committee so that other creditors who are present may vote for that particular committee. I should like to nominate the following gentlemen: [He then named six persons.]

"THE REFEREE: I am just accepting nominations and not the entire committee. I can permit other people to make nominations. Are you a creditor yourself?

"MR. MARGOLIS: Counsel for a creditor. * * *

"THE REFEREE: You are to nominate your own creditor who you represent and nobody else.

"MR. MARGOLIS: I have the right to nominate anyone.

"THE REFEREE: You have no right. You can nominate one creditor. That is all. I am permitting the others to volunteer.

"MR. MARGOLIS: All right, gentlemen, will you nominate yourselves?

"THE REFEREE: I am running this Court. Not you. I am, Mr. Margolis. Sit down.

"MR. MARGOLIS: I differ with Your Honor. These people not understanding procedure, I want to clarify with them—

"THE REFEREE: Is there any person in here, any creditor who wishes to volunteer to serve on this committee? We will start, then.

[Thereupon, there were fifteen volunteers.]

"THE REFEREE: Any others? I am going to appoint all that have volunteered. That will be the committee.

committee were three of the six representatives that had been nominated by counsel.

Following the naming of the creditors' committee the referee then proceeded to the election of a trustee. Pertinent portions of the proceedings are set out in the margin.[2]

A discussion of some of the general principles governing the selection of a trustee is found in 2 Collier, Bankruptcy 1648–72 (14th ed. 1962). Excerpts from

2. "THE REFEREE: [W]e will proceed now with the election of the Trustee. * * *

" * * * Now, I expect you creditors will nominate someone that will do the job for all the creditors. There will be no appointment of another lawyer at this time, so that will take out the politics, if there are any in the appointment of a Trustee.

"Now, I have one thing that is bothering me, and we do not have the practice of solicitation, claims. There have been two sides in this committee that have written letters to the creditors that I must condemn; therefore, I understand there are a number of claims here that have been solicited, been solicited upon misapprehensions of law and of fact and probably considerable animosities existed between the creditors. * * *

"THE REFEREE: * * * The courtroom is almost full of creditors. I will permit creditors to vote here that are present. I will permit proxies that have not been obtained by solicitation; therefore, I will not have the voting of any claims that have been solicited from either side. If you desire to contact these creditors, if you think you should have more time so they could be present and vote, I will grant that time. I will now accept nominations for a Trustee.

"VOICE: Your Honor, I nominate Mr. Tomlinson.

"VOICE: I second the nomination.

"VOICE: I nominate William Gooding as Trustee.

"VOICE: Second it.

"VOICE: I move the nominations be closed.

"THE REFEREE: Before you close the nominations, to be fair with you gentlemen. Mr. Gooding is known to this Court. He is a young lawyer. Has a large practice. I do not think he is qualified.

"VOICE: Your Honor, I would like to nominate Mr. Glenn here.

"THE REFEREE: You are nominating a lawyer. I do not want a lawyer.

I need somebody that is experienced in this field.

"MR. RAUCH: Do I understand you intended to mean that the Court would not even entertain a lawyer as Trustee?

"THE REFEREE: That is correct.

"MR. RAUCH: I represent Talcott, one of the creditors. I would like to nominate Norman Ross. * * *

"THE REFEREE: I will accept his nomination, only with the right of checking into his qualifications. * * *

"THE REFEREE: Anyone that represents a company and is with the company can vote. I am not going to be technical about that. If he is an agent of the company, I will permit him to vote if he is representing the company. Doesn't have to be a lawyer. If it's any company that has a representative here, and I see there are some people that came here from New York, they have come here personally, they have given their proxy, I expect them to make the claim in person. I am—they are representing the company here, their agents, so I will permit that. We will put two ballots. Put your name and amount of the claim. The winner must have both the amount and the number before he will be deemed elected. The Court will pass upon the qualifications of whoever is elected * * *.

[Thereafter, a recess was taken and balloting was had for the trustee. After recess the following proceedings occurred.]

"THE REFEREE: Mr. Tomlinson has 23 claims, aggregate of one hundred fifty thousand and one hundred thirty-three. Norman Ross eight claims, total amount one hundred sixty thousand nine hundred forty-four. So you have a deadlock. The Court will then appoint a Trustee.

"THE REFEREE: There are some creditors that didn't vote, large creditors. If you don't want to vote, it's up to you. If you want to vote, I will still give you a chance. If not, I am going to appoint Mr. Tomlinson as Trustee, because I appointed him as Receiver. He is familiar with the matter. I know him. I think Mr. Tomlinson has experience. I am

such discussion are set forth in the margin.[3]

■ The record in this case does not contain the claims filed, the proxies solicited or given, or many other matters that were before the referee. We agree that primarily the creditors should elect the trustee. However, as pointed out in the discussion in Collier, *supra*, this right has some limitations. Where the referee has exercised some supervisory powers over the election of a trustee his action should be examined to determine whether or not he has abused his discretion. In this case the record does not provide a model of proper procedure. However, the record is incomplete and we canot say from it whether there was improper solicitation of claims, whether the claims were properly filed, whether proxies were properly given, or whether or not such proxies should have been allowed to vote. The votes that were counted did not show a majority in number and amount for any candidate. In such a situation the referee has the power to appoint a trustee.

■ As stated in Lines v. Falstaff Brewing Co., 233 F.2d 927, 931 (9th Cir.), cert. denied, 352 U.S. 893, 77 S.Ct. 129, 1 L.Ed.2d 88 (1956), " 'The actual administration of bankrupt estates is, by the law, left largely to the referees, and it is settled practice not to disturb their acts unless a plain and injurious error of law or abuse of discretion is shown.' " From the record before us we cannot say in this case that there was

---

satisfied with the way he worked, and I will just keep him in. * * *

"MR. RAUCH: May the record show my objection, are you going to disallow the solicited proxies on the list?

"THE REFEREE: Yes. The record will so state."

3. "Although the theory of the Bankruptcy Act is to give to creditors the privilege of electing their own trustee, it is often observed that such creditors are 'notoriously inert' and 'not always sufficiently advised to protect their interests.' To prevent imposition on the creditors, those in the minority as well as those in the majority, and to avoid the increased burden on the court which such imposition involves, the court (i.e., the judge or referee) is in section 2a (17) given express power of approval or disapproval over the creditors' choice. Where the referee disapproves an election of a trustee or exercises his supervisory powers over the election in some other regard, the court has the discretion to examine the proceeding 'to see if the power was exercised in good cause.' Since the Act prescribes no positive criteria of a trustee's competence other than those enumerated in § 45, the power to disapprove must be exercised in the sound legal discretion of the judge or referee, not lightly or arbitrarily, but only for cause; for the choice of the majority creditors is entitled to the highest consideration and should not be overruled without substantial reasons." Id. at 1648–50.

* * * *

"Inasmuch as the court's decision to approve or disapprove must be derived from the circumstances of each case and the conditions under which the trustee was selected, the courts appear properly reluctant to establish inflexible rules as to the disqualification of trustees for 'prejudicial associations.' " Id. at 1651–52.

* * *

"Approval of a candidate for the office of trustee may be refused not only because of prejudicial association with interests adverse to the estate, or because his election was obtained through the undue activity of the bankrupt, but also on account of certain activities in his own behalf frowned on by the courts of bankruptcy. One of the most frequently occurring situations in this regard is where the candidate (usually an attorney) solicits proxies from creditors in order that he might vote them for himself and thereby obtain the desired appointment to the trusteeship." Id. at 1659.

* * *

"In addition to authority delegated by the 1938 Act to appoint a trustee when the candidate elected by creditors fails to qualify, the court retains the power under § 44a to appoint a trustee when a majority in both number and amount fail to agree. Thus, where one candidate had the votes of majority in number of the creditors, while his opponent had a majority in amount, and no request was made for a second ballot, the referee was held justified in appointing a trustee." Id. at 1661–62.

Cases supporting the above set out excerpts are contained in the text quoted from Collier, but are not reproduced here.

such an abuse of discretion or that there was a plain and injurious error of law.

■ There is another reason for not reversing this case. The trustee was appointed on July 31, 1962—over seventeen months ago. The assets of the business were sold at that time. No good purpose can be accomplished by reversing the case at this time.

In a similar case [4] where the question was as to whether the referee erred in refusing to permit a certain name to be placed in nomination for trustee and as to whether he erred in failing to permit certain claims to be voted for trustee the court said:

"However, we feel that, notwithstanding the conclusions to which we have come in this matter, there has been no substantial injury done to the rights of the petitioner and other creditors represented by the attorney for the petitioner. It has now been over ten months since the appointment of the trustee. We assume most of the administration of the estate of the bankrupt has been completed, and it would serve no useful purpose to set aside the appointment of the trustee now and throw the matter open for a new election. On this point, the language of the Sixth Circuit Court of Appeals, on a similar subject, in Sloan's Furriers, Inc., v. Bradley, 146 F.2d 757, at page 759, supra, is pertinent: 'The estate of the bankrupt has now been fully liquidated, its liabilities finally determined, and its assets converted into cash,—nothing remains to be done except a distribution of the fund to creditors. We are asked to set aside the election of the trustee, and so to adjudicate, as a nullity, everything that has so far been done by him, and to throw the matter open to another fight among creditors whose claims, as voted, have now been finally without contest allowed. This would seem to be an utterly futile proceeding.' "

Likewise in this case we believe that a reversal would be an utterly futile proceeding. Even assuming, *arguendo*, that the referee did not strictly follow the rules, no prejudice to the appellant has been shown which in any way affects the substantial rights of the parties. Fed.R.Civ.P. 61.

Judgment affirmed.

4. In the Matter of Flexible Conveyor Co., 156 F.Supp. 164, 174 (N.D.Ohio 1957).