369 F.2d 439
 In the Matter of LENRICK SALES, INC., a Pennsylvania
Corporation, Bankrupt.
James Talcott, Inc., Shapiro Bros. Factors Corp. and
Crompton-Richmond Co., Inc., Factors, Appellants.
 No. 16017.
 United States Court of Appeals Third Circuit.
 Argued Jan. 20, 1967.
Decided Feb. 15, 1967.
 
 Leon S. Forman, Philadelphia, Pa. (M. E. Maurer, Wexler, Mulder & Weisman, Philadelphia, Pa., Berger & Berger, Pittsburgh, Pa., on the brief), for appellants.
 Harry R. Levy, Pittsburgh, Pa., for appellee.
 Before HASTIE, GANEY and SEITZ, Circuit Judges.
 OPINION OF THE COURT
 SEITZ, Circuit Judge.
 
 
 1
 This is an appeal by certain unsecured general creditors ('appellants') from an order of the District Court which dismissed their petition for a review of the order of the Referee in Bankruptcy appointing a Trustee in Bankruptcy of his own choosing.
 
 
 2
 Appellants are three unsecured general creditors with claims presented at the first meeting of creditors totaling about $44,000.00 out of about $118,000.00 of such claims. They, along with certain other creditors with claims of about $62,000.00, sought through representatives to vote at the first meeting of creditors for their own nominee as trustee. The right of such representatives to vote was denied by the Referee under circumstances now developed.
 
 
 3
 On February 23, 1966, after an unsuccessful attempt at an arrangement under Chapter XI, Lenrick Sales Inc. ('bankrupt') was adjudicated a bankrupt and one Aaron Cohen was appointed receiver by the court. The receiver proceeded to liquidate the assets. On March 21, 1966, the first meeting of creditors was held. Unfortunately, no stenographic record was made of the proceedings.[1] The Referee's contemporaneous notes of the meeting are so scanty as to be substantially useless. A predictable controversy ensued as to what there occurred. However, we confine ourselves to the record and the reasonable inferences therefrom.
 
 
 4
 We do know from the Referee's notes that the bankrupt was examined. We think it fair to infer that representatives of a majority of creditors in both number and amount were present and attempted to vote for their own nominee. However, by an order dated March 21, 1966, the Referee appointed Cohen as Trustee. The printed portion of the caption of the order reading 'Order Approving Appointment of Trustee' is stricken. The words 'Appointment of Trustee by Referee' remain. Moreover, the order contains a recital that 'The Creditors * * * failed to appoint a trustee'.
 
 
 5
 The next development of record occurred on March 31, 1966 when the appellants filed with the Referee their petition for review of the March 21 order. 11 U.S.C.A. 67(c). It contained numerous challenges to the legality and propriety of the Referee's actions. On April 14, 1966, the Referee filed his 'Certificate of Order For Review' with the District Court. It contained a memorandum by the Referee and his findings of fact and conclusions of law ('report'). This was presumably done pursuant to 11 U.S.C.A. 67(a)(8). Appellants challenge the legality of the filing of findings and conclusions by the Referee after he had the petition for review in hand. In view of our ultimate disposition of this case, we find it unnecessary to decide whether the procedure was here proper. We do recognize that there is a division of authority on this point. But we cannot help but note the obviously undesirable implications of such a practice. Certainly a more appropriate procedure could be adopted as part of the administration of the Bankruptcy Act.
 
 
 6
 The Referee's findings and conclusions here purport to support the March 21 order of appointment on the ground that Cohen 'was duly nominated and elected by the claims on file and voted for him, which represented the majority in number and amount of the valid claims filed and allowed * * *'. This finding is diametrically opposed to the ground given in the Referee's own March 21 order.
 
 
 7
 How did not the District Court evaluate the Referee's order and subsequent report? By order dated May 17, 1966, for the reason given in his attached memorandum and pursuant to General Order 47, the District Court 'adopted' the Referee's report and dismissed the petition for review, apparently without briefs or argument. In its accompanying memorandum the court said:
 
 
 8
 'The Referee having rejected the proxies of the New York Credit Men's Adjustment Bureau, Inc., and the creditors present not agreeing on the selection of a Trustee, the Referee acted to protect the interests of all creditors by himself appointing the Trustee. The parties before the Referee were in disagreement to say the least. It is to be noticed that the Referee did not accept the vote electing Aaron Cohen as Trustee, but himself named him as Trustee.'
 
 
 9
 The quotation shows that the trial court adopted the ground for the March 21 order which appeared in the order itself, i.e., failure of creditors to appoint. In so doing, despite the statement that the report was 'in all respects adopted', he necessarily rejected the Referee's finding of fact that Cohen was elected Trustee.
 
 
 10
 Since fundamentally this appeal attacks the validity of the Referee's March 21 order, we look to see whether it is sustainable on this record on the ground recited in that order and the affirming court order, viz., that the creditors failed to appoint a trustee. In this discussion we shall assume that the Referee's conclusion was based on his finding that a majority of creditors both in number and amount failed to vote.
 
 
 11
 Although it is not clear that it was raised at the meeting, let us assume that one reason for the Referee's refusal to accept the votes of appellants and others was that they were based on powers of attorney which, when read with the soliciting letters, did not authorize their holder to use them to vote for the election of the trustee in bankruptcy. We deal with this 'finding' because it was the only 'rational' basis given by the lower court for its affirmance of the Referee's order. Was such a finding proper and, if so, did it justify the immediate appointment of the trustee by the Referee?
 
 
 12
 The appellants' petition for review specifically attacked the procedure allegedly employed by the Referee at the creditors' first meeting. Paragraph 8 charged that 'The Referee erred in accepting 'innuendos' and hearsay about solicitation as substitution for a hearing thereon with testimony and other proof.' The Referee's own report to the court recites that 'There have been turned over to me two letters sent to creditors by the New York Credit Men's Adjustment Bureau Inc.'. From these letters the Referee and court concluded that the powers of attorney executed by the creditors and presented to the Referee by their representatives were insufficient to show authority to vote. Was the Referee justified in relying on such letters, assuming he had them at the meeting? First, the Referee's notes of the first meeting do not mention such letters. Next, the Referee's report says that such letters were 'turned over' to him. Even allowing for informality, this suggests that they were obtained in a non-judicial manner. These factors strongly support the appellants' argument that they were not offered and admitted at the hearing. In such a case it would not be proper for the Referee or the court to rely on them in deciding the matter. Compare In re Aughenbaugh, 125 F.2d 887 (3rd Cir., 1942). But even if this material defect was not decisive, it should have been a red flag to the District Court on review, particularly in view of the clearly erroneous record before him. Some errors have been noticed; another appears in the margin.[2] Certainly the court should not have accepted the letters as though they were decisive of the 'authority to vote' issue. Nothing in the 'clearly erroneous' review standard prevents a party from being afforded the opportunity to show that a Referee's findings are beyond the pale, particularly where no record was made. At a minimum this matter should either have been set for hearing by the court or referred back to the Referee to have a proper hearing on the disputed issues. There was nothing in the record to indicate a sense of urgency to have the trustee appointed, particularly since the receiver was active.
 
 
 13
 Nor is the Referee's action justified because he did not allow their claims for voting purposes and the Bankruptcy Act provides that 'Creditors shall pass upon matters submitted to them at their meetings by a majority vote in number and amount of claims of all creditors whose claims have been allowed and who are present, except as herein otherwise provided.' 11 U.S.C.A. 92(a). We say this because even assuming, contrary to our belief, that the Referee had a proper record basis for his decision, we think that he was not justified in usurping the important right of the creditors to appoint the Trustee. Indeed, this right is so important that absent a clear showing of material or prejudicial delay, the hearing to vote on such appointment should, if necessary, have been continued to give the creditors a reasonable opportunity to make their own choice. Compare In re Harris Const. Co., 37 F.2d 951 (D.C.W.D.Pa., 1929).
 
 
 14
 We think the record does not legally or factually justify the preemptory action of the Referee in appointing the Trustee and thereby depriving the 'majority' creditors of a reasonable opportunity to select the Trustee. In fact, such record as we have comes close to compelling the conclusion that the votes in question should have been counted. In any event, we think the record shows that only another meeting of creditors, properly conducted and recorded, can adequately correct the unfortunate series of errors in these proceedings.
 
 
 15
 All that we have said indicates that the District Court committed error in basing the dismissal of the petition for review on the ground that the creditors failed to appoint a Trustee. Moreover, we cannot condemn too strongly the deviations from acceptable procedural standards which are rampant in this matter. We also deplore the failure of the Referee to keep meaningful summary notes, contemporaneously made, of the important matters arising in proceedings before him when he knew that they were not being recorded. Compare General Order 22.
 
 
 16
 The trustee-appellee argues that even if we find error we should not reverse. He states that no real purpose is to be served by remanding the matter since the estate is practically ready for distribution. He cites, for example, Manhattan Shirt Co. v. Tomlinson, 327 F.2d 449 (9th Cir., 1964). There may well be instances where this approach would be justified. However, we think that the circumstances of this case dictate a reversal. We so conclude primarily because anything less would countenance what appears to have been a substantial violation of the creditors' right to appoint a trustee. Moreover, the appellants and those associated with them before the Referee represented more than 95% in amount of the unsecured claims. Thus, the creditors who were disenfranchised will perhaps be entitled to the great bulk of any distribution to be made. It follows that they will be the ones substantially prejudiced by the delay in distribution and additional expenses which may have to be incurred. Under these circumstances and since the appellants seek a reversal, we think the economic and time factors are not of primary significance. Finally, we desire to emphasize that provincialism and personal preference should have no part to play in the Referee's discharge of his duty to pass on the qualification of the creditors' nominee for Trustee in Bankruptcy.
 
 
 17
 The judgment of the District Court will be reversed and the matter remanded to the District Court for the entry of an order directing the Referee to vacate the Trustee's appointment and to promptly notice a new meeting of creditors to elect a Trustee.
 
 
 
 [1]
 Apparently in the Western District parties are free to arrange to have a reporter present at their own expense but the court does not have funds to employ a reporter for the Referee. The Bankruptcy Act provides a procedure for preserving the evidence in such a case, although it was not followed here. See 11 U.S.C.A. 67(a)(7)
 
 
 [2]
 The Referee's Fourth Finding says that '3 claims out of 28 claims already filed and allowed' were voted for Cohen. The official claim register (Official Form No. 72), showing such claims, has a place to indicate 'allowed'. Yet it does not note an allowance of any of them even up to the time this record was compiled for this appeal. To say the least this finding was not supported of record