531 F.2d 463
 In the Matter of The COLORADO CORPORATION, Bankrupt.
IIT, an International Investment Trust, et al., Petitioners-Appellants,
v.
William C. LAM, Trustee in Bankruptcy of the Colorado
Corporation, Bankrupt, Respondent-Appellee.
 No. 75--1062.
 United States Court of Appeals,
Tenth Circuit.
 Argued May 19, 1975.
Decided Feb. 20, 1976.
 
 Neal J. Morse, New York City (Weinshienk, Miller, Goldburg & Borus, Denver, Colo., on the brief for IIT and Georges Baden, Jacques Delvaux and Ernest Lecuit as Liquidators of IIT; Forsyth, Decker, Murray & Broderick, New York City, and Charles W. Ennis, Denver, Colo., on the brief for Venture Fund (International) N.V., and Jacob A. Schiltkamp and C. G. Hartog as Trustees of Venture Fund (International) N.V.), for petitioners-appellants.
 Robert D. Inman, Denver, Colo., for respondent-appellee William C. Lam, Trustee in Bankruptcy of The Colorado Corp., Bankrupt.
 Robert J. Kapelke, Denver, Colo. (John S. Pfeiffer, Denver, Colo., on the brief), for intervenor Charles A. Baer, Trustee of King Resources Co.
 Before HILL, HOLLOWAY and BARRETT, Circuit Judges.
 HILL, Circuit Judge.
 
 
 1
 Appellant presents only one matter to this Court: the legality of the election of the trustee in bankruptcy for The Colorado Corporation, a bankrupt.
 
 
 2
 The claims which are involved in this dispute are ones held on behalf of IIT, an International Investment Trust (hereinafter IIT) and Venture Fund (International) N.V. (hereinafter Venture Fund). IIT and Venture Fund were part of the IOS complex which was taken over by Robert Vesco. The interrelationships of the IOS operations and the finer points of IOS' contacts with John King and his corporations, including the bankrupt, are not relevant to our present matter and are beyond the record. An involuntary petition in bankruptcy was filed against The Colorado Corporation on April 20, 1971. Venture Fund filed a claim totaling $9,900,000, and IIT filed a claim amounting to $12,450,000.
 
 
 3
 On December 18, 1973, IIT was declared to be in liquidation by a court of the Grand Duchy of Luxembourg. Georges Baden, Jacques Delvaux and Ernest Lecuit were appointed as liquidators and given authority to take all steps to recover IIT's assets anywhere in the world. On February 14, 1974, a Netherlands Antilles court declared Venture Fund to be in bankruptcy; on April 4, 1974, the same court dissolved Venture Fund. J. A. Schiltkamp and C. G. Hartog were appointed trustees to recover Venture Fund's assets.
 
 
 4
 Prior to these foreign liquidations, the SEC filed a suit in the United States District Court for the Southern District of New York against Vesco and forty-one other defendants including IIT and Venture Fund. Subsequently, very similar consent orders were entered in that action by Judge Charles Stewart on April 4, 1974 (IIT), and July 12, 1974 (Venture Fund). In the orders a Special Receiver, John K. Schemmer, was appointed to assist the liquidators and trustees in the recovery and realization of claims in the United States held by IIT and Venture Fund. The orders provided, inter alia, that the powers and duties of the liquidators and trustees were not limited by the special receiver's appointment. The orders stated that '(t)he basic responsibility for the recovery, realization, administration and liquidation of the assets of IIT (the Fund) is recognized to rest in the Liquidators (Trustees).'
 
 
 5
 At the first meeting of creditors of The Colorado Corporation on October 28, 1974, an appearance was entered by Joseph Borus and Neal Morse on behalf of IIT and its liquidators; Charles Ennis entered an appearance on behalf of Venture Fund's trustees. Mr. Lam, then the receiver and now the trustee, was nominated for trustee in bankruptcy by Mr. Pfeiffer, attorney for Charles A. Baer, Trustee of King Resources Company and International Resources, Inc. Mr. Davis was nominated for trustee in bankruptcy by an attorney representing Natural Resources, Inc., a creditor subsequently denied the right to vote based on the existence of an interest materially adverse to the estate. Pfeiffer objected to the rights of IIV and Venture Fund to vote their claims.
 
 
 6
 The objections were scattered but can be summarized as follows: (1) the persons before the court did not have authority to represent IIT and Venture Fund; (2) IIT and Venture Fund have no legal existence and hence no standing; and (3) the court should not give comity to the orders of the courts of Luxembourg and Netherlands Antilles because, inter alia, orders of the bankruptcy court in Colorado have not been recognized in Canada and the United Kingdom. To support these objections, Pfeiffer pointed to an order of Bankruptcy Referee Matsch (now district judge and hereinafter referred to as Judge Matsch), dated February 24, 1972. The relevant portion of that order is as follows:
 
 
 7
 The Colorado Corporation has challenged the capacity of IIT to intervene as any kind of a legal entity. While no particulars were alleged in its response, it is difficult to preceive (sic) what could have been alleged because counsel for this intervenor have themselves had apparent difficulty in describing their client as any kind of legal entity. They assert that IIT has sufficient standing to sue in this Court because trusts and unincorporated associations may do so under 1963 C.R.S. 76--1--6 and F.R.C.P. 17(b). That contention overlooks the fact that this Court has nothing in the record which can be identified as a recognizable entity or quasi entity. If a 'unit investment trust' has definite characteristics under some body of laws, those laws have not been brought to this Court's attention . . .. Accordingly, under the present proof, IIT, an International Investment Trust and IIT Management Company, S.A. are denied standing as intervening creditors in this proceeding.
 
 
 8
 Numerous oral representations were made by counsel on both sides to support their contentions. The documentary proof made available by attorneys for IIT's liquidators and Venture Fund's trustees included: (1) Venture Fund's proof of claim and powers of attorney; (2) IIT's proof of claim and power of attorney; (3) copies of the orders of the Netherlands Antilles court pertaining to Venture Fund; and (4) a copy of the consent order pertaining to IIT signed by Judge Stewart on April 4, 1974.
 
 
 9
 Based on this record, Bankruptcy Judge McGrath determined that IIT's and Venture Fund's claims would be provisionally disallowed and they, therefore, could not vote for the trustee. The election was held and Lam was elected by the single vote cast by the trustee for King Resources Company and International Resources, Inc. Both IIT and Venture Fund sought review in the district court. Judge Stewart was contacted concerning the matter and issued orders on October 29, 1974 (one day after the election). Those orders stated that pursuant to the April 4, 1974 (July 12, 1974) consent order, IIT and its liquidators (Venture Fund and its trustees) 'are authorized to participate fully in any federal or other bankruptcy . . . proceeding' and that IIT and the liquidators (Venture Fund and the trustees) 'have all rights and powers as creditor' including voting for trustees. Counsel for appellants also swore out three affidavits.
 
 
 10
 District Judge Finesilver heard oral arguments and held that Judge McGrath had not complied with the rule of specificity of findings of fact and conclusions of law. The case was remanded for Judge McGrath to prepare findings of fact and conclusions of law with specificity. Judge McGrath was to consider Judge Matsch's prior order, Judge Stewart's orders, and the appointments by the courts of Netherlands Antilles and Luxembourg. Judge Finesilver stated he did not envision any additional evidence would be presented; the remand order does not indicate, contrary to appellants' argument, that the first meeting was to be reconvened.
 
 
 11
 In his findings and conclusions following remand, Judge McGrath discussed the portion of Judge Matsch's order reprinted above. Judge McGrath said Judge Matsch had found it '. . . difficult to determine the type of legal entity IIT is, and denied standing to IIT as an intervening creditor in the involuntary proceedings.' In relation to Judge Stewart's April 4, 1974, order, Judge McGrath found the following:
 
 
 12
 (T)he United States District Court for the Southern District of New York appointed John K. Schemmer as a Special Receiver for the Liquidators of IIT. It allowed the said Receiver to collect the assets of IIT and to recover said assets of IIT in the United States. At paragraph 2 the Court stated: 'The Special Receiver shall function only with respect to any asset, claim or matter, or any aspect thereof, responsibility for the handling of which is delegated to him by the Liquidators . . .. The Special Receiver may request delegation of authority pursuant thereto from the Liquidators and failing a grant from them may make such a request to the Committee.'[1] There is nothing which allows the Special Receiver of the Liquidators of IIT to vote a claim for the election of a Trustee.
 
 
 13
 Judge McGrath found that Judge Stewart's order of July 12, 1974, applying to Venture Fund appointed a special receiver in the same manner. He further refused to consider Judge Stewart's orders of October 29, 1974, which were entered after the first meeting of creditors had adjourned. Judge McGrath believed that Judge Stewart had given limited effect to the orders of the Luxembourg and Netherlands Antilles courts concerning IIT and Venture Fund.
 
 
 14
 On the issue of comity, Judge McGrath noted that the trustees of King Resources had been denied access to the Canadian courts because those courts refused to recognize the jurisdiction of our courts. Judge McGrath found that the Canadian government and its representatives played a large part in the orders of April 4, 1974, as to IIT and of July 12, 1974, as to Venture Fund. He further stated '(t)here is no allegation or proof that the Netherlands Antilles or Luxembourg would extend comity to our courts in its various bankruptcies and reorganization proceedings.'
 
 
 15
 When the matter returned to the district court, Judge Finesilver affirmed the decision below. He stated the ruling was proper at that juncture of the proceedings and was based on the evidence then before the bankruptcy judge. He clearly limited the instant ruling by saying: 'Thus we need not, nor do not, intimate in this Order any view as to the present or future standing of either ITT (sic, IIT) or Venture as creditors in the bankruptcy proceedings or other litigation involving appellants' claims.'
 
 
 16
 Although there are subsidiary questions, the principal issue is: did the bankruptcy judge abuse his discretion in provisionally disallowing the claims of IIT and Venture Fund for purposes of voting for a trustee in bankruptcy of The Colorado Corporation? That question must be answered based upon the evidence which the bankruptcy judge had before him on October 28, 1974. Matters submitted after that date are not properly before this Court in determining the propriety of the bankruptcy judge's decision. Based on Bankruptcy Rule 810 and the Advisory Committee's Note pertaining thereto,[2] it is clear that the district court cannot receive evidence when reviewing a finding or an order by the bankruptcy judge.
 
 
 17
 Much of what is urged in both briefs cannot be considered 'evidence' which was before the bankruptcy judge. Counsel for all parties made many representations to the court but did not call witnesses. Judge McGrath properly took judicial notice of the files of the court relating to the controversy. Duhart v. Carlson, 469 F.2d 471 (10th Cir. 1972), cert. denied, 410 U.S. 958, 93 S.Ct. 1431, 35 L.Ed.2d 692 (1973). The matters judicially noticed and the previously mentioned documentary evidence constitute the evidence before Judge McGrath when he determined to provisionally disallow the claims and conducted the trustee election.
 
 
 18
 As indicated above, we must decide if Judge McGrath abused his discretion in provisionally disallowing the claims. Manhattan Shirt Co. v. Tomlinson, 327 F.2d 449 (9th Cir. 1964); In re Haupt & Co., 240 F.Supp. 10 (S.D.N.Y.1965), aff'd, 343 F.2d 726 (2d Cir. 1965). The theory of the Bankruptcy Act is that creditors elect the trustee with provision for approval or disapproval by the bankruptcy judge. 2A Collier on Bankruptcy P44.06 (1974). The filed claim itself is prima facie evidence of the claim and its validity. Whitney v. Dresser, 200 U.S. 532, 26 S.Ct. 316, 50 L.Ed. 584 (1906); In re Estrada's Market, 222 F.Supp. 253 (S.D.Cal.1963); 11 U.S.C. § 93(a). Consequently, more than a mere general assertion is necessary to justify the bankruptcy judge in even provisionally disallowing the claim. In re Morales Vda de Cruz, 357 F.Supp. 1118 (D.Puerto Rico 1973); 2A Collier, supra P44.02(2) at 1646. It is the duty of a person objecting to a claim to come forward with evidence to establish the claim's invalidity, even when only a provisional disallowance is sought. 2A Collier, supra at 1647. However, the cases have not required that 'intricate questions of law and fact pertaining to the claim' be determined before a bankruptcy judge can provisionally allow or disallow a claim for the purposes of voting for a trustee. In re Pan-American Match Co., 242 F. 995 (D.Mass.1917); In re Milne, Turnbull & Co., 159 F. 280 (S.D.N.Y.1908); 2A Collier, supra at 1644--45.
 
 
 19
 We first consider some problems concerning the documentation of the representatives' authority to vote. In his further findings and conclusions, Judge McGrath notes that Judge Stewart's orders do not directly give the special receiver authority to vote claims for the election of the trustee. He also notes there is no showing of special authority from the liquidators or the Committee to the special receiver. These findings appear to assume the attorneys representing IIT and Venture Fund were actually acting on behalf of the special receiver. There is absolutely nothing in the record to support this assumption; the orders of Judge Stewart do not prevent the liquidators and trustees from exercising their own authority as they had done in giving powers of attorney to the attorneys present before the bankruptcy court. The aforementioned findings and conclusions are irrelevant and/or clearly erroneous and cannot afford a basis for provisionally disallowing the vote of either claim.
 
 
 20
 The orders of Judge Stewart were not intended to constitute powers of attorney as needed for representatives to vote claims for the trustee. Bankruptcy Rule 910(c). Separate powers of attorney were submitted to Judge McGrath on behalf of the IIT and Venture Fund representatives. On appeal, there is no reliance on any alleged technical insufficiency in those powers of attorney and the bankruptcy judge did not rely on any failure to conform with the proper form for such orders.
 
 
 21
 Appellee's counsel argues the bankruptcy court should not give comity to the decrees from the Luxembourg and Netherlands Antilles courts. Appellee contends the persons before the court had no authority to represent IIT and Venture Fund because the orders appointing the liquidators and trustees should not be recognized in American courts. Appellee states that Canada and United Kingdom courts had not given comity to orders of the bankruptcy court in Colorado. Furthermore, appellee claims that Canadian citizens had 'procured' the Netherlands Antilles decree. Appellee finally argues there was no proof submitted that Netherlands Antilles and Luxembourg would honor American court decrees. For purposes of this appeal, we assume that appellee's factual representations concerning this lack of reciprocity argument are correct; Judge McGrath consulted court records and agreed with appellee's position.
 
 
 22
 'Comity,' in the legal sense, is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws.
 
 
 23
 Hilton v. Guyot, 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895). Reciprocity has been a consideration in the granting or withholding of comity, Hilton, supra, although it has been abandoned by some courts. Somportex Ltd. v. Philadelphia Chewing Gum Corp., 453 F.2d 435, 440 n. 8 (3rd Cir. 1971), cert. denied, 405 U.S. 1017, 92 S.Ct. 1294, 31 L.Ed.2d 479 (1972).
 
 
 24
 Here we are asked to take reciprocity one step further and deny comity to the Netherlands Antilles decree because of actions by citizens of a country which was not giving comity to American court orders. Denying comity to the Netherlands Antilles order because of lack of reciprocity in Canada is such a misdirected use of the reciprocity consideration as to constitute an abuse of discretion. No equitable considerations support that result. Comity is withheld when the granting of recognition of foreign laws would prejudice the rights of the forum's own citizens. 16 Am.Jur.2d Conflict of Laws § 6 (1964). We cannot see how allowing foreign creditors to vote for a trustee subject to duties imposed by American law, see, e.g., 11 U.S.C. § 75, can prejudice American citizens.
 
 
 25
 The failure of appellants to prove that Luxembourg and Netherlands Antilles would grant comity to orders of our bankruptcy courts also is not determinative. Appellee was the objector and bore the burden of proof on the denial of comity; he introduced no evidence that Luxembourg or the Netherlands Antilles would deny comity. Consequently, no evidence supporting denial of comity was presented even utilizing reciprocity as the determinative factor. Particularly because of the nature of the foreign orders involved herein--controlling the status of domestic organizations--we believe it was an abuse of discretion not to grant comity to the orders of the foreign courts.
 
 
 26
 Because the provisional disallowance of Venture Fund's claim was based on the denial of comity to the orders of the Netherlands Antilles court, it was an abuse of discretion to provisionally deny Venture Fund's representatives the right to vote their claim. Nothing was presented to support the objection that Venture Fund was not a legal entity.
 
 
 27
 The situation concerning the objection to IIT, that it was not a legal entity, is somewhat different due to the prior determination by Judge Matsch which denied IIT standing to intervene because nothing in the records identified it as a 'recognizable entity or quasi entity.' Due consideration for the statutory rule that the proof of claim constitutes prima facie evidence of the validity and amount of the claim requires a decision that the provisional disallowance of IIT's claim was also an abuse of discretion.
 
 
 28
 The proof of claim recited, inter alia, the following: (1) IIT was organized under the laws of the Grand Duchy of Luxembourg; (2) Messrs. Delvaux, Lecuit and Baden were liquidators of IIT; (3) the liquidators were acting under the authority of the District Court of Luxembourg and were authorized to collect IIT's assets and prosecute claims; and (4) The Colorado Corporation was indebted debted to IIT in the amount of $12,450,000 with interest from July 1, 1970. Furthermore, the consent order of Judge Stewart noted the proceedings in Luxembourg involving IIT's liquidation and appointed a special receiver to assist in recovery and realization of assets of IIT in this country. Thus, the proof of claim and the consent order give some indication that IIT is a recognizable legal entity.
 
 
 29
 We readily admit that giving comity to the Luxembourg decree, as evidenced in the proof of claim and the consent order, would not conclusively establish IIT's legal status. Also giving comity to the consent order would not conclusively establish IIT's legal status as to the present parties. See O'Hare Int'l Bank v. Lambert, 459 F.2d 328 (10th Cir. 1972) (where the importance of one federal district court giving comity to orders and actions of another federal district court was recognized). The burden of proof, however, as to the provisional disallowance was on the objector. 2A Collier, supra, P44.02(2) at 1647. The objector here relied on unspecified earlier testimony, the earlier ruling of Judge Matsch, arguments against awarding comity (previously rejected in this opinion) and assertions that IIT should come forward with evidence.
 
 
 30
 None of these matters presents sufficient support for the bankruptcy court's provisional disallowance of IIT's claim. In his earlier ruling, Judge Matsch indicated that his determination was made 'under the present proof.' New proof via the proof of claim itself and the consent order had been tendered; consequently, the earlier ruling provided no real support for the objector's position. We see no reason in logic or law for the burden of proof to have shifted to IIT under this state of facts. The burden was still on the objector who failed to overcome the prima facie validity of the claim. The bankruptcy judge abused his discretion in denying IIT the right to vote its claim.
 
 
 31
 Appellee finally seeks support in the harmless error rule, F.R.Civ.P. 61. See also Bankruptcy Rule 905. Appellee argues appellants have suffered no prejudice: 'if the outcome of the vote does not prejudice the appellants, then, failure to participate in the vote does not prejudice them either.' Appellee also contends pragmatically that a new election would only further complicate the proceeding and impose new delays.[3]
 
 
 32
 Appellants' right to participate in the selection of a trustee is one of statutory derivation. Title 11 U.S.C. § 72(a) provides in pertinent part: 'The creditors of a bankrupt . . . shall, at the first meeting of creditors after the adjudication . . . appoint a trustee or three trustees of such estate.' Bankruptcy Rule 207(b) provides in part: 'The trustee . . . shall be elected by a majority vote in number and amount of claims of all creditors who are present and voting in person or by proxy.' (Emphasis added.) Bankruptcy Rule 209(a) provides: 'The creditors of a bankrupt entitled to vote under Rules 207 and 208 shall elect a trustee at the first meeting, subject to approval by the court and to the provisions of this rule.' Here only one claim was voted and it elected the trustee. The claim by the Trustee of International Resources and King Resources was voted as 'five million plus.' IIT's claim is in excess of $12 million; Venture Fund's claim is for $9,900,000. Clearly, the denial of these two creditors' right to vote may have affected the outcome of the election.
 
 
 33
 Cases which have found harmless error from the improper denial of a creditor's right to vote are distinguishable. Manhattan Shirt Co. v. Tomlinson, 327 F.2d 449 (9th Cir. 1964) (assets of business already sold); Sloan's Furriers, Inc. v. Bradley, 146 F.2d 757 (6th Cir. 1945) (estate had been fully liquidated, liabilities determined and assets converted into cash); In re State Thread Co., 126 F.2d 296 (6th Cir. 1942) (vote would probably not have altered outcome and a small estate was involved); In re Flexible Conveyor Co., 156 F.Supp. 164 (N.D.Ohio 1957) (assumed most of administration of estate had been completed). This case does not present the denial of a technical right but a denial of the right of these creditors to vote for their choice for trustee when their votes could have affected, and probably would have altered, the outcome. Injury to the estate is not a prerequisite to reversal in this situation.
 
 
 34
 This case is REVERSED and REMANDED to the district court for a new election of the trustee for the bankrupt.
 
 
 
 [1]
 The Committee is described with particularity in the Amicus brief submitted by the SEC. '(A) multinational committee of regulatory authorities was formed to coordinate international efforts to protect the interests of investors who had fallen victim to the fraud perpetrated by Vesco. This informal organization, which was specifically recognized by Judge Stewart in the Vesco litigation, is comprised of the securities regulatory authorities of the United States, the federal government of Canada, the Provinces of Ontario and Quebec, the Grand Duchy of Luxembourg and the Netherlands Antilles. The primary purpose underlying the creation of this committee is to recover and preserve any remaining assets of the IOS complex wherever they might be found for the benefit of investors in various IOS components.'
 
 
 [2]
 Rule 810 provides, 'Upon an appeal the district court may affirm, modify, or reverse a referee's judgment or order, or remand with instructions for further proceedings. The court shall accept the referee's findings of fact unless they are clearly erroneous, and shall give due regard to the opportunity of the referee to judge as to the credibility of the witnesses.' The Advisory Committee's Note states, 'The rule does not retain the provision of General Order 47 authorizing a receipt of further evidence by the district judge in connection with a review of a referee's order or findings.'
 
 
 [3]
 Appellee points to an off the record admission by appellants that they are not concerned with the outcome of the election but only with the vindication of their rights to represent IIT and Venture Fund, respectively. This admission is just as it is characterized by appellee--off the record