CUNARD STEAMSHIP COMPANY,
LIMITED, Plaintiff,

v.

SALEN REEFER SERVICES,
A.B., Defendant.

In re UNITED BRANDS
COMPANY, Garnishee.

No. 85 Civ. 0233 (RWS).

United States District Court,
S.D. New York.

May 1, 1985.

Kirlin, Campbell & Keating, New York City, for plaintiff; Joseph K. Molloy, New York City, of counsel.

Haight, Gardner, Poor & Havens, New York City, for defendant; Donald J. Kennedy, Edward A. Rial, New York City, of counsel.

### OPINION

SWEET, District Judge.

Defendant Salen Reefer Services A.B. ("Salen") has moved 1) to vacate an order of attachment entered in this action on January 9, 1985, 2) for an order requiring plaintiff Cunard Steamship Company, Ltd. ("Cunard") to provide a more definite statement of damages, and 3) for an order requiring Cunard to post security in the amount of $400,000. After the submission of evidence and hearing of testimony, the motion to vacate the attachment is granted.

**Prior Proceedings**

On December 19, 1984 Salen, a Scandinavian business entity, commenced a bankruptcy proceeding in Stockholm City Court, Kingdom of Sweden. Pursuant to the procedures of that court, an announcement of bankruptcy was published and an administrator was appointed to manage the affairs of the bankrupt. Salen appeared in this

proceeding through the administrator, Bjorn Edgren. (Exhibit 1 is a translation of the Swedish Court's statement of insolvency and the appointment of Edgren.) On January 9, 1985, an order of attachment was issued to Cunard, an English corporation, under Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, authorizing the attachment of goods and chattels in the amount of $1,100,000.00 held by United Brands Company for Salen's account.

On January 24, 1985 Salen brought an order to show cause, made returnable January 28, seeking dissolution of the attachment. A hearing was held on January 28 and January 29, 1985.

**Facts**

Cunard alleges in its complaint that Salen and Cunard had entered a time charter with respect to the vessel SCYTHIA and that on or about December 27, 1984 Salen defaulted on its obligations under the charter, causing damages of $1.1 million in unpaid fees.

On September 29, 1981 Cunard entered a contract with United Brands Company whereby United Brands hired six vessels from Cunard. Six separate charter parties were entered. The contract provided for London arbitration of disputes arising from the charter party, and the agreement set a rental rate for class S vessels of $388,089.44 per thirty days. A supplemental agreement also established a redelivery schedule for the vessels, specifying that redelivery of the last "S" vessel would not be later than March 15, 1985. At the time the Cunard-United Brands contracts were entered into, a sub-charter agreement between United Brands and Salen, covering the same six vessels, was entered.

In November, 1983, the time-charter between Cunard and United Brands was terminated. Although a time-charter between Cunard and Salen was not executed, there was substantial communication between Cunard and Salen with respect to the terms of Salen's continued use of the vessels covered by the Cunard-United Brands time-

charter. On November 22, 1983 Cunard telexed to Salen:

[SIC] REF PHONECONVERSATION EARLIER TODAY THIS IS TO CONFIRM THAT WE OFFER FIRM TO CONTINUE THE CHARTER ON THE SCYTHIA AS FROM REDELIVERY FROM UNITED BRANDS UPTO THE END OF THE PRESENT CHARTER PARTY. ALL OTHER TERMS AND CONDITIONS TO REMAIN UNCHANGED.

THIS OFFER IS FIRM FOR REPLY LATEST TODAY 2100 HOURS LONDON TIME. YOU CAN REACH ME AT PHONENO 468/100460

On November 23, 1983, Salen telexed in return:

FOLLOWING SUCCESSFUL DISCUSSIONS UB, [SIC] WE HEREBY CONFIRM ACCEPTANCE OF YOUR OFFER TO TAKE ON TIME CHARTER, 'MV SCYTHIA', COMMENCING NOON, LOCAL SHIPS TIME TODAY, 23 NOV 1983. TERMS OF CHARTER, BALTIME 1939, AND HEAD AGREEMENT AS PER CP AND AGREEMENT DATED 29 SEPTEMBER 1981, BETWEEN CSS COMPANY AND UNITED BRANDS COMPANY, DETAILS OF WHICH ARE KNOWN TO YOU....

On November 25, 1983 Cunard confirmed the redelivery schedule:

CONFIRMING OUR TELECON THIS P.M. REDELIVERY TO BE GOVERNED BY PROVISIONS EQUIVALENT TO OUR CP AND HEAD AGREEMENT OF 29 SEPT 1981 WITH UB, AS ADVISED IN OUR TELEX NO 6661 OF 23 NOV 1983. THESE PROVISIONS STATE:—

1.  C. P IS SUBJECT TO SUPPLEMENTAL HEAD AGREEMENT OF 29/9/81

2.  PARA 3 OF HEAD AGREEMENT READS 'NOTWITHSTANDING THE PROVISIONS OF THE RESPECTIVE CHARTER PARTIES, REDELIVERIES WILL BE GOVERNED BY SCHEDULE 3 ATTACHED HERETO SETTING FORTH THE APPROXI-

MATE REDELIVERY DATES PRO-
VIDED THAT FIRST VESSEL TO BE
REDELIVERED NOT BEFORE 31
OCT 1984 AND LAST VESSEL TO BE
REDELIVERED NOT LATER THAN
15 MARCH 1985.

3. SCHEDULE 3 READS

PURSUANT TO CLAUSE 3 OF SAID
HEAD AGREEMENT, REDELIVER-
IES OF VESSEL SHALL BE AS FOL-
LOWS:—

| | |
|---|---|
| ONE 'C' VESSEL | OCT 31 1984 |
| ONE 'C' VESSEL | NOV 27 1984 |
| ONE 'S' VESSEL | DEC 24 1984 |
| ONE 'S' VESSEL | JAN 20 1985 |
| ONE 'S' VESSEL | FEB 16 1985 |
| ONE 'S' VESSEL | MAR 15 1985 |

On December 19, 1984 Salen sent the following communication:

WE REFER TO YOUR TELEPHONE
CONVERSATION WITH LARS RUT-
BERG AND WE ARE HEREWITH
PLEASED TO RECONFIRM THAT WE
HAVE BEEN ABLE TO REARRANGE
OUR VARIOUS PROGRAMMES.

WE WILL THUS REDELIVER THE
SOXONIA TO UNITED BRANDS
ABOUT JANUARY 17TH.

THE SCYTHIA WILL CONSEQUENT-
LY BE REDELIVERED AS THE LAST
VESSEL.

Subsequently, on January 2, 1985 the following telex was sent by Salen to Cunard:

IN VIEW OF THE BANKRUPTCY OF
SALEN REEFER SERVICES AB WE
HEREBY DECLARE THAT THE OWN-
ERS MAY DISPOSE OF THE VESSEL
WITHOUT ANY CLAIMS BY THE
CHARTERERS FOR THE TERMI-
NATION OF THE CHARTER.

SALEN REEFER SERVICES AB IN
BANKRUPTCY

FOR THE LIQUIDATOR

ELISABETH FURA–SANDSTROEM

At the hearing, Fura-Sandstroem, a Swedish attorney representing the trustee in Bankruptcy of Salen, testified that, under Swedish law, following a judicial declaration of bankruptcy, all pending lawsuits are frozen and a meeting of creditors is called. (Exhibit 3 is the notice of such a meeting for Salen).

The Swedish bankruptcy statute states that:

§ **23.** After the publication of the bankruptcy decision, property belonging to the bankruptcy estate may not be restrained for claims against the debtor. If such restraint would nevertheless take place, it will not be valid. Notwithstanding the bankruptcy, property which has been pledged for a certain claim may be restrained for that claim.

The effect of the publication of the notice of bankruptcy under Swedish law has been summarized as follows:

a A meeting of creditors is convened, usually about one month after the court order.

b An interim trustee is appointed.

c the proceedings are advertised in the Official State Gazette and in one or more local newspapers.

d Legal actions by creditors for recovery of debts are suspended, including cases where payment has not been made to the creditors concerned under enforcement proceedings.

e The court may make an order, either at this stage or when the application is lodged, to prevent the debtor from absconding with his assets. According to the circumstances, the order might provide for the safeguarding of the assets, the confiscation of the debtor's passport, or even the detention of the debtor.

*European Insolvency Guide,* Sweden, 3.1.-2, (Exhibit D of Kennedy affidavit).

**Discussion**

Salen seeks to vacate the attachment based on the principle of international comity and on the theory that Cunard has not shown the existence of a charter party between Cunard and Salen. In the alternative, Salen seeks to reduce the value of the attachment and to require Cunard to post a bond.

The question posed is whether an American court, as a consequence of a Swedish court's adjudication of the insolvency of a Swedish business entity, should vacate an admiralty attachment obtained by an English corporation in an effort to force London arbitration of an alleged debt between the Swedish and English corporations. The rationale for extending comity to foreign courts was stated in *Hilton v. Guyot,* 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895), where the Court defined comity as:

> the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws.

In order to extend comity to a decision of a foreign court, it must be shown that the foreign court is a court of competent jurisdiction and that the laws and public policy of the forum state and the rights of its residents will not be violated by recognition of the foreign court's ruling. *Kenner Products v. Societe Fonciere et Financiere,* 532 F.Supp. 478, 479 (S.D.N.Y.1982); *Cornfeld v. Investors Overseas Services, Ltd.,* 471 F.Supp. 1255, 1259 (S.D.N.Y.), *aff'd,* 614 F.2d 1286 (2d Cir.1979); *Clarkson Co. v. Shaheen,* 544 F.2d 624, 629 (2d Cir.1976). Reciprocity of the foreign state's courts in granting comity to the forum state's courts, although perhaps a consideration in granting or denying comity, is not determinative. Judge Learned Hand stated: "The court [in *Hilton v. Guyot*] certainly did not mean to hold that an American court was to recognize no obligations or duties arising elsewhere until it appeared that the sovereign of the locus reciprocally recognized similar obligations existing here. *That doctrine I am happy to say is not a part of American jurisprudence.*" (emphasis in original). *In Re Aktiebolaget Kreuger & Toll,* 20 F.Supp. 964, 969 (S.D.N.Y.1937), *quoting Direction der Disconto-Gesellschraft v. U.S. Steel,* 300 F. 741, 747, *affirmed* 267 U.S. 22, 45 S.Ct. 207, 69 L.Ed. 495. *See Matter of Colorado Corp.,* 531 F.2d 463, 468 (10th Cir.1976); *Johnston v. Compagnie Generale Transatlantique,* 242 N.Y. 381, 152 N.E. 121 (1926).

United States courts have granted comity to adjudications of bankruptcy by foreign courts. In *Kenner Products, supra,* Kenner, an American company, brought an action in New York State Court against Agoche-Willott, a French company, for an alleged violation of a guaranty of trade credit. On December 5, 1980 Agoche-Willott removed the case to federal court in New York, and on June 26, 1981 the Commercial Court of Lille, France appointed a receiver in bankruptcy for the defendant. Agoche-Willott then moved to transfer the action to the court's suspense docket, pending termination of the bankruptcy proceedings in France. The court held:

> We do not find that recognition of a foreign bankruptcy proceeding in this case would violate the laws or public policy of the United States. Indeed, "the firm policy of American courts is the staying of actions against a corporation which is the subject of a bankruptcy proceeding in another jurisdiction." *Cornfeld v. Investors Overseas Service, Ltd.,* 471 F.Supp. at 1259. United States bankruptcy law itself provides for the suspension of actions against a bankrupt, *see* 11 U.S.C. § 362 (Supp. III 1979); Rules Bankr.Proc.Rule 401(a), to ensure efficient and fair distribution of assets in a single proceeding. *David v. Hooker Ltd.,* 560 F.2d 412, 417 (9th Cir.1977). In view of the above, federal courts have often granted comity to foreign liquidation or bankruptcy proceedings. *See In re Colorado Corp.,* 531 F.2d 463, 468 (10th Cir.1976); *Cornfeld v. Investors Overseas Services, Ltd.,* 471 F.Supp. at 1262, *IIT v. Cornfeld,* 462 F.Supp. 209, 217 (S.D.N.Y.), *aff'd in part, rev'd in part,* 619 F.2d 909 (2d Cir.1980).

*Kenner* at 479.

In *Matter of Colorado, supra,* IIT, an international investment trust, was declared to be in liquidation by a court of the Grand Duchy of Luxembourg, and Venture

Fund, another investment entity, was declared to be bankrupt by a court of the Netherlands Antilles. Prior to these foreign liquidations, the SEC had filed a suit in the Southern District of New York against IIT and Venture Fund. In each action the Honorable Charles E. Stewart entered a consent order appointing a special receiver to assist the foreign liquidators in the "recovery, realization, administration and liquidation of the assets" of the companies. *Id.* at 465. In a challenge to extending comity to the Luxembourg and Netherlands bankruptcy holdings, the court rejected the lack of proof of reciprocity of comity as a basis for denying comity, and stated: "Particularly because of the nature of the foreign orders involved herein—controlling the status of domestic corporations—we believe it was an abuse of discretion not to grant comity to the orders of the foreign courts." *Id.* at 469. In recognizing the foreign judgments the Court stated that "[c]omity is withheld when the granting of recognition of foreign laws would prejudice the rights of the forum's own citizens." *Id.* at 468. *See also Clarkson Co. Ltd. v. Shaheen,* 544 F.2d 624 (2d Cir.1976).

■ In the instant case the public policy of the United States is furthered by extending comity to the Swedish court. The jurisdiction of the Swedish court in this matter is not disputed, and recognizing the Swedish court's ruling will facilitate the orderly and systematic distribution of the assets of Salen and avoid the piecemeal litigation of the estimated $650 million in liabilities of Salen and its affiliated companies. *See* 11 U.S.C. § 304. The Swedish statute embodies the principle of the "automatic stay" in United States Bankruptcy law, and in a similar purely domestic context the automatic stay would require that an arbitration begun after the filing for bankruptcy protection be stayed pending the bankruptcy proceeding. Further, this case, like *Matter of Colorado, supra,* involves a Swedish court's determination of bankruptcy of a Swedish company, and no rights of United States citizens are involved. Whether Sweden would grant comity to an

American court's imposition of an "automatic stay" is unclear from the testimony, yet the issue is not determinative. *See Fotochrome, Inc. v. Copal Co.,* 517 F.2d 512, 516 (2d Cir.1975).

Cunard argues, however, that there is a strong countervailing public policy in favor of arbitration, *see* 9 U.S.C. §§ 1 *et seq.* and 9 U.S.C. §§ 201 *et seq.* This policy is not sufficient in the context of this case to deny comity to the Swedish court's holdings. In *Fotochrome, supra,* the court upheld a foreign arbitral award where the arbitration involved was commenced *prior* to the filing of bankruptcy and where the United States Bankruptcy Court had no personal jurisdiction over the party that had initiated the arbitration in Japan. Consequently, the *Fotochrome* court reasoned that the "automatic stay" of the American court did not extend to the Japanese arbitration. In this case, the Swedish Court's announcement of Salen's bankruptcy preceded Cunard's effort to obtain arbitration and Cunard has not argued that the Swedish courts cannot exercise jurisdiction over Cunard.

Moreover, the circumstances of this case are the reverse of those in *Fotochrome.* Here, the issue is an American court's staying arbitration as a result of recognition of a foreign court's holding that a foreign corporation is insolvent. In *Fotochrome* the issue was an American court's recognition of the validity of a foreign arbitration where the foreign arbitrator had refused to recognize the American court's declaration that the American corporation was bankrupt. The Japanese decision not to recognize the American court order in *Fotochrome* does not provide guidance here. Rather, the recognition by American courts of foreign court holdings of insolvency, *supra,* establishes the appropriate principle of comity.

Having decided to extend comity to the Swedish court, I need not reach the remaining challenges to the attachment.

**Conclusion**

On the facts presented I hold that the public policy of the United States is best

served by extending comity to the Swedish Court's announcement of Salen's bankruptcy and the consequent implementation of a stay on creditor actions. Cunard's attachment, subsequent to the announcement of bankruptcy, though valid under Supplemental Rule B For Admiralty Actions, should be vacated so that the assets of Salen may be distributed in a single proceeding in Sweden pursuant to Swedish law.

The clerk is directed to vacate the attachment and dismiss this case in ten (10) days so that Cunard may have time to appeal this decision.

IT IS SO ORDERED.

## APPENDIX

### EXHIBIT ONE

Free Translation

Applicant: Salen Reefer Services, A.B.
556029–8118
10609 Stockholm

Re: Application for Bankruptcy

The undersigned company is insolvent and consequently hereby files for Bankruptcy.
The assets are considerable.

As Trustee we suggest Bjorn Edgren, attorney, of Advokatfirman Vinge AB, Box 1703, 111 87 Stockholm. Edgren has been approached and has accepted the position as trustee.

SE—Banken, Handelsbanken, PK Banken and Bank of American, four of the main creditors have agreed to the appointment of Edgren as trustee. Together these banks have more than Three Billion SEK due from the Salen group. Edgren is completely independent towards *all* the creditors, which is not the case about the other suggested trustees. Edgren is also quite capable of handling this Bankruptcy. .

Stockholm, 12/19/84

*Decision*
Edgren is approved.

### EXHIBIT THREE

| DISTRICT COURT OF STOCKHOLM | NOTICE | Case no |
|---|---|---|
| Division 6 | pursuant to paragraph 2 | K 1488/84 a.o. |
| Bankruptcy Judge | § 18 a of the Bankruptcy Act | File annex 4 |
| | Date | |
| | 1984–12–19 | |

Saléninvest Aktiebolag, 556025–2362, Salén Reefer Services Aktiebolag, 556029–8118, Salén Tanker Aktiebolag, 556002–3359 and Salén Dry Cargo Aktiebolag, 556022–5517, Norrlandsgatan 15, Stockholm,

has 1984–12–19 been adjudged bankrupt in the District Court of Stockholm. The bankruptcy is being dealt with as common bankruptcy. The supervisory authority is the enforcement service in Stockholm, Box 4545, 102 65 Stockholm. The first meeting of creditors will be held 1985–02–20 at 9 a m in District Court premises at Bergsgatan 48, Stockholm. Anyone wishing to lodge proof of their claim shall do so in writing in duplicate with the Bankruptcy Judge, Stockholms tingsrätt (District Court of Stockholm), div. 6, Box 8307, 104 20 Stockholm. All instruments of debt in the bankruptcy shall have been lodged no later than 1985–02–25
Notices of the bankruptcy will be inserted in Dagens Nyheter.

Bankruptcy Judge

Appointed as trustee in bankruptcy under § 45 of the Bankruptcy Act: Björn Edgren, Advokatfirman Vinge, Box 1703, 111 87 Stockholm.