*454
 
 RE, Chief Judge:
 

 Plaintiff-appellant, Cunard Steamship Company, Ltd. (Cunard), appeals from an order of the United States District Court for the Southern District of New York which vacated an attachment Cunard had obtained against defendant-appellee, Salen Reefer Services, A.B., (Salen). The district court found that the public policy of the United States would best be served by extending comity to a pending Swedish bankruptcy proceeding and the related stay on creditor actions. Thus, the court ordered the attachment vacated so that the debtor’s assets could be distributed in the Swedish bankruptcy proceeding according to Swedish law. Since we find that the district court properly granted comity to the Swedish court’s stay on creditor actions, we affirm.
 

 Procedural Background
 

 On December 19, 1984, Salen, a business entity established under Swedish law, commenced a bankruptcy proceeding in the Stockholm City Court, in the Kingdom of Sweden. In accordance with Swedish law, an interim administrator was appointed to supervise the affairs of the bankrupt, and creditor actions against the debtor were suspended.
 

 On January 9, 1985, plaintiff-appellant, Cunard, commenced this action in the District Court for the Southern District of New York by obtaining an order of attachment against certain assets of Salen held by garnishee, United Brands Company, pursuant to the Arbitration Act, 9 U.S.C. § 8 (1982), and Rule B(l) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure. Cunard based its claim on a contract of charter between Cunard and Salen. The contract provides for the arbitration in London of any dispute arising under the contract. On January 24, 1985, Salen brought a motion by Order to Show Cause seeking to dissolve the attachment.
 

 After a hearing, the District Court, 49 B.R. 614, for the Southern District of New York, in an opinion dated May 1, 1985, granted Salen’s motion and ordered that the attachment be vacated. The district court found that the public policy of the United States would be furthered by granting comity to the Swedish court’s stay on creditor actions during the Swedish bankruptcy proceeding.
 

 Cunard raises several objections to the district court’s order which vacated the attachment. First, it contends that the Swedish court does not possess either
 
 in person-am
 
 jurisdiction over Cunard, or
 
 in rem
 
 jurisdiction over the attached assets. Thus, it argues that the district court erred in finding that the Swedish court was a court of competent jurisdiction. Second, it submits that the district court’s extension of comity in this case violates the public policy of the United States and the State of New York that favors arbitration of disputes. Third, Cunard contends that the district court’s order contravenes the policies which underlie section 304 of the Bankruptcy Code, 11 U.S.C. § 304 (1982). Finally, the plaintiff argues that it did not receive reasonable notice of Salen’s intention to prove foreign law pursuant to Rule 44.1 of the Federal Rules of Civil Procedure.
 

 Section 30h of the Bankruptcy Code
 

 The threshold question presented is whether, when a debtor is involved in a foreign bankruptcy proceeding, section 304 of the Bankruptcy Code is the exclusive remedy for a trustee or representative of the bankrupt who wishes to stay or enjoin creditor actions in the United States.
 

 Section 304 was enacted as part of the Bankruptcy Reform Act of 1978, and was intended to deal with the complex and increasingly important problems involving the legal effect the United States courts will give to foreign bankruptcy proceedings. In order to administer assets in the United States and to prevent dismemberment by local creditors of assets located here, the representative of a foreign bank
 
 *455
 
 rupt may commence a section 304 proceeding, rather than a full bankruptcy case.
 
 See S.Rep. No.
 
 989, 95th Cong., 2d Sess. 35,
 
 reprinted in
 
 1978
 
 U.S.Code Cong. & Ad.News
 
 5787, 5821
 
 {Senate
 
 Report);
 
 H.Rep. No.
 
 595, 95th Cong., 2d Sess. 324-25,
 
 reprinted in
 
 1978
 
 U.S.Code Cong. & Ad.News
 
 5963, 6281
 
 (House
 
 Report). This remedy is intended to be broad and flexible.
 
 Id.; see also Angulo v. Kedzep, Ltd.,
 
 29 B.R. 417, 419 (S.D.Tex.1983) (ancillary proceeding under section 304 is flexible enough to be used for limited purpose of obtaining discovery);
 
 Hearings on H.R. 31 and H.R. 32 before the Subcommittee on Civil and Constitutional Rights of the House Committee on the Judiciary,
 
 94th Cong., 2d Sess., Serial 27, 1509, 1510 (1976) (Statement of Prof. Stefan A. Riesenfeld). Indeed, section 304 may be said to have been designed to accommodate the problems we confront here, in which foreign bankruptcy proceedings have been instituted and creditors are attempting to seize assets of the debtor located in the United States.
 

 Since bankruptcy courts possess a general expertise in bankruptcy matters, there is an historic preference which favors bankruptcy adjudications by a judge with experience in bankruptcy law.
 
 See, e.g., In re Kaiser,
 
 722 F.2d 1574, 1581 (2d Cir.1983). The bankruptcy courts’ expertise in bankruptcy matters should prove helpful in appraising foreign bankruptcy proceedings and in determining the effect those proceedings should be given in the United States.
 

 Section 304 provides,
 
 inter alia,
 
 that the court may enjoin actions and the enforcement of judgments against the debtor or the property of the debtor, or “order other appropriate relief.” 11 U.S.C. § 304(b). The statute specifically lists several factors or “guidelines” that the court is to consider in evaluating a debtor’s petition under Section 304. 11 U.S.C. § 304(c). As the House Report explains:
 

 The court is to be guided by what will best assure an economical and expeditious administration of the estate, consistent with just treatment of all creditors and equity security holders; protection of local creditors and equity security holders against prejudice and inconvenience in processing claims and interests in the foreign proceeding; prevention of preferential or fraudulent disposition of property of the estate; distribution of the proceeds of the estate substantially in conformity with the distribution provisions of the bankruptcy code; and, if the debtor is an individual, the provision of an opportunity for a fresh start. These guidelines are designed to give the court the maximum flexibility in handling ancillary cases. Principles of international comity and respect for the judgments and laws of other nations suggest that the court be permitted to make the appropriate orders under all of the circumstances of each case, rather than being provided with inflexible rules.
 

 House Report, supra,
 
 at 324-25, U.S.Code Cong. & Admin.News 1978, at 6281.
 

 Since section 304 was designed for cases such as this, it would have been eminently proper for the district court to have referred the case to a bankruptcy “unit” of the court.
 
 See RBS Fabrics Ltd. v. G. Beckers & Le Hanne,
 
 24 B.R. 198, 200 (S.D.N.Y.1982); 28 U.S.C.A. § 151 (West Supp.1985). In its memorandum of law before the district court, the defendant requested relief “pursuant to § 304 of the Bankruptcy Code,” and the district court considered this section in evaluating Sal-en’s motion. At 618. However, although we believe that an ancillary proceeding pursuant to section 304 would have been a preferred remedy, the fact that the district court did not refer the case to the bankruptcy court does not require that its decision be reversed.
 

 We do not find in the statute or in the legislative history a clear congressional mandate, either express or implied, that section 304 was to be the exclusive remedy for a foreign bankrupt. The statute is not phrased in mandatory or exclusive terms, and the language of the accompanying House and Senate Reports is permissive.
 
 *456
 
 For example, both the House and Senate Reports state that “the foreign representative
 
 may
 
 file a petition under this section.”
 
 Senate Report, supra,
 
 at 35;
 
 House Report, supra,
 
 at 324 (emphasis added), U.S. Code Cong. & Admin.News 1978, at 5821, 6281.
 

 Section 304, as originally introduced in both the House and Senate, was substantially similar to section 304 as enacted, but contained no reference to comity.
 
 See
 
 H.R. 8200, 95 Cong., 1st Sess. § 304,
 
 reprinted in
 
 Collier on Bankruptcy, App. Ill (1984); S. 2266, 95th Cong., 2d Sess. § 304,
 
 reprinted in
 
 Collier on Bankruptcy, App. Ill (1984). Section 304(c) was subsequently amended before passage in order expressly to direct the bankruptcy court to consider comity when evaluating a petition under section 304.
 
 See
 
 11 U.S.C. § 304(c). It is clear that the drafters of the original bill did not intend to overrule in foreign bankruptcies well-established principles based on considerations of international comity.
 
 See, e.g., Clarkson Co. v. Shaheen,
 
 544 F.2d 624, 629 (2d Cir.1976);
 
 In re Colorado Corp.,
 
 531 F.2d 463, 468 (10th Cir.1976). A more reasonable interpretation is that comity was added to § 304(c) to clarify and require that comity must be considered in ancillary proceedings in the bankruptcy court.
 

 In proposing the predecessor bill to the Bankruptcy Code, the Commission on the Bankruptcy Laws of the United States, in its explanatory notes accompanying section 4-103 of the proposed bill, the predecessor to section 304, expressly stated: “Nothing in the Act precludes a state or federal nonbankruptcy court from recognizing as a matter of comity at the behest of a foreign trustee a stay or injunction emanating from a foreign court having jurisdiction of the administration of a debtor’s estate.”
 
 Report of the Commission on the Bankruptcy Laws of the United States,
 
 H.R. Doc. No. 137, 93d Cong., 1st Sess., Part II, 71 (1973). While the Commission’s explanatory notes are not definitive as legislative history, they are useful in determining the drafters’ intent. Since section 4-103 is substantially similar to section 304, and since there is no subsequent indication Congress intended a contrary effect, it may be concluded that section 304 was not considered by Congress to be exclusive. “When as here Congress adds a new remedy ..., where other remedies had been clearly recognized, it would be expected to say so if it meant the new remedy to be exclusive.”
 
 Leist v. Simplot,
 
 638 F.2d 283, 313 (2d Cir.1980),
 
 aff'd sub nom. Merrill Lynch, Pierce, Fenner & Smith v. Curran,
 
 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982).
 

 The ancillary proceeding was conceived as a more efficient and less costly alternative to commencing a plenary proceeding which would be duplicative of a foreign proceeding. Congress retained the option of commencing a full bankruptcy case if the estate in the United States is substantial or complicated enough to require a full case for proper administration.
 
 See
 
 11 U.S.C. § 303(b)(4) (1982).
 

 International Comity
 

 The district court aptly described the question before it as “whether an American court, as a consequence of a Swedish court’s adjudication of the insolvency of a Swedish business entity, should vacate an admiralty attachment obtained by an English corporation in an effort to force London arbitration of an alleged debt between the Swedish and English corporations.” 49 B.R. at 617. We hold that in vacating the attachment, the district court properly extended comity to the Swedish adjudication of bankruptcy and stay of creditor actions.
 

 In the United States, the leading case on the concept of comity is
 
 Hilton v. Guyot,
 
 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895). In that case, the Supreme Court described comity as:
 

 the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws.
 

 
 *457
 
 159 U.S. at 164, 16 S.Ct. at 143. Comity will be granted to the decision or judgment of a foreign court if it is shown that the foreign court is a court of competent jurisdiction, and that the laws and public policy of the forum state and the rights of its residents will not be violated.
 
 See, e.g., id.
 
 at 202-03, 16 S.Ct. at 158-59;
 
 Clarkson Co. v. Shaheen,
 
 544 F.2d 624, 629 (2d Cir. 1976);
 
 Kenner Products Co. v. Societe Fonciere et Financiere Agache-Willot,
 
 532 F.Supp. 478, 479 (S.D.N.Y.1982).
 

 As the Court of Appeals for the Third Circuit explained:
 

 Although more than mere courtesy and accommodation, comity does not achieve the force of an imperative or obligation. Rather, it is a nation’s expression of understanding which demonstrates due regard both to international duty and convenience and to the rights of persons protected by its own laws. Comity should be withheld only when its acceptance would be contrary or prejudicial to the interest of the nation called upon to give it effect.
 

 Somportex Ltd. v. Philadelphia Chewing Gum Corp.,
 
 453 F.2d 435, 440 (3d Cir. 1971),
 
 cert. denied,
 
 405 U.S. 1017, 92 S.Ct. 1294, 31 L.Ed.2d 479 (1972)
 
 (citing
 
 L. Or-field & E. Re, International Law 736-37 (1965)).
 

 Cunard contends that the grant of comity by the district court was improper because the Swedish bankruptcy forum, the Stockholm City Court, lacks
 
 in personam
 
 jurisdiction over Cunard and
 
 in rem
 
 jurisdiction over the attached property. Salen disagrees and maintains that jurisdiction over the bankrupt is all that is necessary for the granting of comity.
 

 It is clearly established that in order to grant comity to a foreign court’s award of a money judgment against a defendant, the foreign court must have obtained valid personal jurisdiction over the defendant.
 
 See, e.g., Sprague & Rhodes Commodity Corp. v. Instituto Mexicano Del Cafe,
 
 566 F.2d 861, 863 (2d Cir.1977) (per curiam);
 
 Somportex Ltd. v. Philadelphia Chewing Gum Corp.,
 
 453 F.2d 435, 441 (3d Cir.1971),
 
 cert. denied,
 
 405 U.S. 1017, 92 S.Ct. 1294, 31 L.Ed.2d 479 (1972). This principle reflects and is in accord with our concept of due process that, in order for comity to be extended, the foreign court must abide by fundamental standards of procedural fairness.
 

 The concept of due process, of course, is not unique to American jurisprudence. In
 
 Buchanan v. Rucker,
 
 9 East 192, 103 Eng. Rep. 546 (K.B.1808), a seminal case in private international law, the plaintiff attempted to enforce in England a foreign judgment which was obtained after process was effected by having the summons nailed to the courthouse door on the Island of Tobago. The defendant had no notice of the summons and, indeed, had never set foot on the Island of Tobago. Refusing to enforce the judgment, Lord Ellenborough illustrated the practical limits of the comity doctrine with the following oft-quoted queries: “Can the island of Tobago pass a law to bind the rights of the whole world? Would the world submit to such an assumed jurisdiction?”
 
 Id.
 
 at 194, 103 Eng. Rep. at 547;
 
 see also Schibsby v. Westenholz,
 
 L.R. 6 Q.B. 155, 160-61 (1870). In
 
 Schibsby v. Westenholz,
 
 Lord Blackburn, writing for the Court of the Queen’s Bench, answered: “No, but every country can pass laws to bind a great many persons; and therefore the further question has to be determined, whether the defendant in the particular suit was such a person as to be bound by the judgment which it is sought to enforce.”
 
 Id.
 
 at 160-61. Vacating an attachment against the property of a foreign bankrupt, however, presents legal and policy considerations far removed from an attempt to enforce an invalid foreign judgment.
 

 The rationale underlying the granting of comity to a final foreign judgment is that litigation should end after the parties have had an opportunity to present their cases fully and fairly to a court of competent jurisdiction. The extending of comity to a foreign bankruptcy proceeding, by staying or enjoining the commencement or continuation of an action against a debtor or its
 
 *458
 
 property, has a somewhat different rationale. The granting of comity to a foreign bankruptcy proceeding enables the assets of a debtor to be dispersed in an equitable, orderly, and systematic manner, rather than in a haphazard, erratic or piecemeal fashion. Consequently, American courts have consistently recognized the interest of foreign courts in liquidating or winding up the affairs of their own domestic business entities.
 
 See, e.g., In re Colorado Corp.,
 
 531 F.2d 463, 468 (10th Cir.1976);
 
 Kenner Products Co. v. Societe Fonciere et Financiere Agache-Willot,
 
 532 F.Supp. 478, 479 (S.D.N.Y.1982);
 
 Cornfeld v. Investors Overseas Services, Ltd.,
 
 471 F.Supp. 1255, 1259-60 (S.D.N.Y.),
 
 aff'd,
 
 614 F.2d 1286 (2d Cir.1979);
 
 cf. Canada Southern Ry. v. Gebhard,
 
 109 U.S. 527, 539, 3 S.Ct. 363, 371, 27 L.Ed. 1020 (1883); Restatement (Second) of Conflict of Laws §§ 299, 386 (1971). It has long been established that foreign trustees in bankruptcy were granted standing as a matter of comity to assert the rights of the bankrupt in American courts.
 
 See
 
 J. Story,
 
 Commentaries on the Conflict of Laws
 
 §§ 420-421 (1834) and cases cited therein. Although the early cases upheld the priority of local creditors’ attachments,
 
 see id.,
 
 the modern trend has been toward a more flexible approach which allows the assets to be distributed equitably in the foreign proceeding.
 
 See Banque de Financement, S.A. v. First National Bank of Boston,
 
 568 F.2d 911, 920-21 (2d Cir.1977);
 
 In re Culmer,
 
 25 B.R. 621, 629 (Bankr.S.D.N.Y.1982); Riesenfeld,
 
 The Status of Foreign Administrators of Insolvent Estates: A Comparative Survey,
 
 24 Am.J.Comp.L. 288, 305-06 (1976). In recognizing foreign bankruptcy proceedings, no court has required that the foreign bankruptcy tribunal obtain
 
 in personam
 
 jurisdiction over each creditor.
 
 See, e.g., In re Culmer,
 
 25 B.R. 621, 628-29 (Bankr.S.D.N.Y.1982);
 
 cf.
 
 Dicey and Morris,
 
 The Conflict of Laws
 
 678-80 (8th ed. 1967). English courts will recognize an assignment to a representative of creditors in a foreign bankruptcy proceeding as long as the court had jurisdiction over the bankrupt.
 
 Id.
 
 Under English law, “the title of the foreign trustee would prevail if the foreign adjudication in bankruptcy preceded the attachment or garnishment of the debt.”
 
 Id.
 
 at 680 (citing
 
 Galbraith v. Grimshaw,
 
 [1910] A.C. 508, 510).
 

 In
 
 Canada Southern Ry v. Gebhard,
 
 109 U.S. 527, 3 S.Ct. 363, 27 L.Ed. 1020 (1883), United States bondholders of a Canadian railroad company subject to a reorganization plan in Canada sued in New York to recover on the bonds. Although the reorganization plan was approved by a majority of the railroad’s shareholders and creditors, and by the Canadian Parliament, the plaintiffs had neither assented to the reorganization plan nor subjected themselves to the jurisdiction of any Canadian court. The Supreme Court held that the plaintiffs were bound by the reorganization plan and that the New York action was therefore barred. The Court found that the reorganization plan was consistent with the spirit of our bankruptcy law, and explained:
 

 Unless all parties in interest, wherever they reside, can be bound by the arrangement which it is sought to have legalized, the scheme may fail. All home creditors can be bound. What is needed is to bind those who are abroad. Under these circumstances the true spirit of international comity requires that schemes of this character, legalized at home, should be recognized in other countries.
 

 109 U.S. at 539, 3 S.Ct. at 371,
 
 quoted in Cornfeld, supra,
 
 471 F.Supp. at 1260. The court also declared that “every person who deals with a foreign corporation impliedly subjects himself to such laws of the foreign government, affecting the powers and obligations of the corporation with which he voluntarily contracts, as the known and established policy of that government authorizes.”
 
 Id.
 
 109 U.S. at 537, 3 S.Ct. at 370. This does not mean that a foreign court could render a binding money judgment against a person over whom it possesses no jurisdiction, based solely on that person’s dealings with a foreign corporation. It does mean, however, that creditors of an insolvent foreign corporation may be
 
 *459
 
 required to assert their claims against a foreign bankrupt before a duly convened foreign bankruptcy tribunal.
 

 Cunard also argues that vacating the attachment violates the state and federal public policy in favor of arbitration. While the strong public policy in favor of arbitration is well recognized,
 
 see, e.g., Scherk v. Alberto-Culver Co.,
 
 417 U.S. 506, 516-20, 94 S.Ct. 2449, 2455-58, 41 L.Ed.2d 270 (1974);
 
 Waterside Ocean Navigation Co. v. International Navigation Ltd.,
 
 737 F.2d 150, 152 (2d Cir.1984), the public interest in the fair and efficient distribution of assets in a bankruptcy is also significant.
 
 See
 
 11 U.S.C. §§ 304(c) & 362 (1982). Indeed, the legislative history of the Bankruptcy Act makes clear that arbitrations are subject to the automatic stay provisions of section 362.
 
 See House Report, supra,
 
 at 340-41.
 

 The principles of Swedish bankruptcy law are not dissimilar to those of our Bankruptcy Code. Swedish law requires that upon declaration of bankruptcy, an interim trustee or administrator be appointed and notice sent to all creditors. A meeting of creditors is scheduled and legal actions by creditors are stayed. In addition, the court has the power to issue orders preventing the debtor from dissipating or absconding with assets.
 
 See
 
 European Insolvency Guide, Sweden § 3.1.
 

 The guiding premise of the Bankruptcy Code, like its predecessor, the Bankruptcy Act, is the equality of distribution of assets among creditors.
 
 See, e.g., Sampsell v. Imperial Paper & Color Corp.,
 
 313 U.S. 215, 219, 61 S.Ct. 904, 907, 85 L.Ed. 1293 (1941);
 
 Israel-British Bank (London) Ltd. v. Federal Deposit Ins. Corp.,
 
 536 F.2d 509, 513 (2d Cir.),
 
 cert. denied sub nom.
 
 429 U.S. 978, 97 S.Ct. 486, 50 L.Ed.2d 585 (1976). Cunard is not a secured creditor of Salen, but a general creditor. Cunard initiated this action and obtained the attachment after Salen had filed its petition for bankruptcy. In contrast with
 
 Fotochrome, Inc. v. Copal Co.,
 
 517 F.2d 512 (2d Cir. 1975), upon which Cunard relies, the arbitration in this case was commenced subsequent to the institution of bankruptcy proceedings.
 

 In attaching these funds, Cunard has attempted to maintain a captive fund to secure any arbitral award it may receive. There is, however, no compelling policy reason for a general creditor whose claim is subject to arbitration to receive a preference over other creditors.
 
 See
 
 11 U.S.C. § 362(a) (1982);
 
 House Report, supra,
 
 at 340-41. In the words of Judge Gurfein, writing for this court: “The road to equity is not a race course for the swiftest.”
 
 Israel-British Bank, supra,
 
 536 F.2d at 513. It may be added that, although Cunard does business and has a presence in the United States, it is incorporated and based in England. Furthermore, the contract at issue has no connection with the United States and Salen is a Swedish business entity.
 

 Cunard has not demonstrated that the laws or public policy of the United States would be violated or in any way infringed by according comity to the Swedish bankruptcy proceedings. Indeed, the facts amply support the district court’s conclusion that the public policy of the United States would be best served by recognizing the Swedish proceedings and thereby “facili-tat[ing] the orderly and systematic distribution of the assets of Salen.” At 618. The district court noted that comity would not be granted if it would result in prejudice to United States citizens.
 
 Id.
 
 (quoting
 
 In re Colorado Corp.,
 
 531 F.2d 463, 468 (10th Cir.1976)). Moreover, there is no indication that Cunard will be prejudiced or treated unjustly if it were to participate in the Swedish bankruptcy proceedings. In examining the extension of comity under section 2a(22) of the prior Bankruptcy Act, ch. 541, § 2a(22), 76 Stat. 570, 570 (1962) (repealed 1978), this court held: “In exercising its discretion the district court is to guard against forcing American creditors to participate in foreign proceedings in which their claims will be treated in some manner inimical to this country’s policy of equality.”
 
 Banque de Financement, S.A., v. First National Bank of Boston,
 
 568 F.2d 911, 921 (2d Cir.1977). There is no
 
 *460
 
 indication that Cunard will be treated in any manner inimical to our policy of equality. Cunard points out that, under Swedish law, general creditors receive a lower preference than other types of creditors. This is entirely consistent with the law in the United States.
 

 Cunard also argues that, since there is no indication that a Swedish court would grant comity to a United States bankruptcy court under analogous circumstances, the district court’s granting of comity here was improper. We find this contention without merit. In nations which share our ideals of justice and concepts of procedural due process, it may almost be assumed that a final judgment of one of our courts of competent jurisdiction would be accorded deference. Nevertheless, while reciprocity may be a factor to be considered, it is not required as a condition precedent to the granting of comity.
 
 See, e.g., Johnston v. Compagnie Générale Transatlantique,
 
 242 N.Y. 381, 387, 152 N.E. 121, 123 (1926). As the New York Court of Appeals stated in
 
 Johnston,
 
 comity “therefore rests, not on the basis of reciprocity, but rather upon the persuasiveness of the foreign judgment.”
 
 Id.
 
 Indeed, section 304 requires that prejudice and inconvenience to American claimhold-ers be considered, but makes no mention of reciprocity.
 
 See
 
 11 U.S.C. § 304(e).
 

 Although Cunard has attempted to prove that a Swedish court would not grant reciprocity or recognize bankruptcy proceedings in the United States, Salen contends that a Swedish court would extend comity to a bankruptcy proceeding here. Both parties seem to concede that an equivalent situation has yet to be presented to a Swedish court. The proofs submitted by the parties do not establish conclusively whether reciprocity would be granted in Sweden. The district court did not decide this issue because it found reciprocity not to be determinative.
 

 We agree with the district court that, while reciprocity may in some circumstances be considered a relevant factor, proof of reciprocity is not essential for the granting of comity.
 
 See In re Colorado Corp., supra,
 
 531 F.2d at 469;
 
 Somportex Ltd., supra,
 
 453 F.2d at 440 n. 8. As Judge Learned Hand explained, the Supreme Court in
 
 Hilton v. Guyot
 
 “certainly did not mean to hold that an American court was to recognize no obligations or duties arising elsewhere until it appeared that the sovereign of the locus reciprocally recognized similar obligations existing here.
 
 That doctrine I am happy to say is not a part of American jurisprudence. ” Direction der Disconto-Gesellschaft v. United States Steel Corp.,
 
 300 F. 741, 747 (S.D.N.Y.1924) (emphasis added),
 
 aff'd,
 
 267 U.S. 22, 45 S.Ct. 207, 69 L.Ed. 495 (1925),
 
 quoted in In re Aktiebolaget Kreuger & Toll,
 
 20 F.Supp. 964, 969 (S.D.N.Y.1937) (extending comity to judgment of Swedish bankruptcy tribunal),
 
 aff'd,
 
 96 F.2d 768 (2d Cir.1938).
 

 Since reciprocity is not an essential element in granting comity, we hold that the district court did not abuse its discretion in vacating the attachment.
 

 Rule H.1
 

 Cunard’s final contention is that Sal-en failed to give reasonable notice of its intention to prove foreign law as required by Rule 44.1 of the Federal Rules of Civil Procedure. Rule 44.1 provides that a “party who intends to raise an issue concerning the law of a foreign country shall give notice in his pleadings or other reasonable written notice.” Fed.R.Civ.P. 44.1. The notes of the Advisory Committee on the Rules state: “In some situations the pertinence of foreign law is apparent from the outset; accordingly the necessary investigation of that law will have been accomplished by the party at the pleading stage, and the notice can be given conveniently in the pleadings.” Fed.R.Civ.P. 44.1 advisory committee note. In addition, the court may consider any relevant source, whether or not submitted by a party or admissible as evidence. Fed.R.Civ.P. 44.1.
 

 
 *461
 
 With its motion for an order to show cause, Salen submitted an affidavit by Sal-en’s New York attorney and a memorandum of law, both of which clearly indicated that Salen’s motion was based on the pending Swedish bankruptcy proceedings. Attached as exhibits to the affidavit were the Swedish court order appointing a trustee, and an excerpt from a book entitled “European Insolvency Guide,” which explained certain aspects of Swedish bankruptcy law. Thus, when Cunard received Salen’s initial papers, it was clearly informed that the effect of the Swedish bankruptcy proceedings was a central issue in the case. Moreover, at the conclusion of the hearing on Salen’s motion, on January 28, 1985, the district court offered Cunard the opportunity to cross-examine Salen’s witness, Ms. Elisabet Fura-Sandstrom, a Swedish lawyer, more extensively at a later date. In addition, the district court reserved decision, and stated that it would allow Cunard sufficient time to respond with whatever proof it deemed appropriate.
 

 As we have noted, Cunard had the opportunity to raise whatever questions it wished, including reciprocity by a Swedish court. Nevertheless, it was not able to challenge seriously the legitimacy or effect of the Swedish stay, and the question of reciprocity in this case is not of sufficient significance to withhold the granting of comity. Thus, we conclude that Cunard had reasonable notice of the issue of Swedish law, and ample opportunity to present its own position.
 

 Conclusion
 

 In view of the foregoing, we hold that, while an ancillary proceeding pursuant to section 304 of the Bankruptcy Code is the preferred statutory remedy, in this case, the district court properly exercised its discretion in granting comity to the Swedish bankruptcy court, and vacating the attachment of Salen’s assets in the United States. The judgment of the district court is, therefore, affirmed.