RUSSELL, Circuit Judge:
The plaintiffs appeal the Order of the district court sustaining on grounds of comity the Italian bankruptcy court’s appointment of Davide Farinacci as trustee of Montepelmo, S.P.A., a bankrupt Italian corporation, and vesting him as exclusive representative of Montepelmo’s Italian creditors for purposes of the assertion of their claims against Enercons Virginia, Inc., an American corporation which had declared bankruptcy in the Eastern District of Virginia.
The claims of Montepelmo and its creditors against Enercons arise out of a series of fraudulent transactions engineered by Gino A.G. Bianchini, an Italian citizen residing in Virginia, that led to the bankruptcy of Montepelmo, Enercons and Bianchini himself. Bianchini established Enercons in 1981. Beginning in 1982, Bianchini, in his capacity as administrator and stockholder of Montepelmo, induced approximately twenty (20) Italian banks to lend about $16 million to Montepelmo to finance Montepelmo’s exportation of goods to Enercons and other American firms. Bianchini personally guaranteed repayment of many of the loans. The export transactions, however, never took place and documents evidencing their occurrence were merely forgeries prepared by Bianchini. Bianchini caused much of the loan proceeds to be transferred from Montepelmo to Swiss bank accounts maintained in his name or in Enercons’ name and he then transferred the funds to Enercons’ accounts in Virginia, which funds rep *1471 resented the entirety of Enercons’ capital and assets.
When Montepelmo and Bianchini, as guarantor, defaulted on the loans, the involuntary bankruptcy of Montepelmo ensued under Italian law on June 1, 1983 and the Italian court appointed Farinacci trustee in bankruptcy. Shortly thereafter, appellants, four Italian banks which made loans to Montepelmo, determined that Bianchini had defrauded them and filed attachment proceedings against Bianchini in Virginia, Washington, D.C., New York, and later against Bianchini and Enercons in Switzerland and the Netherlands Antilles. Ultimately, the banks effected the attachment of about $12 million, most of which was held by Enercons. Enercons and Bianchini then filed for bankruptcy in July 1982.
It was Farinacci’s position in the Italian bankruptcy proceedings that he, as trustee of the bankrupt Montepelmo, had a right of action and claim against the trustee in the Virginia bankruptcy of Enercons and Bianchini. He argued that Bianchini had defrauded Montepelmo by transferring the loan proceeds to bank accounts belonging to himself and Enercons, his corporate affiliate and alleged alter ego, while acting in his fiduciary capacity as an administrator of Montepelmo. Accepting this theory, the Italian bankruptcy court authorized Farinacci to make an appearance in the Virginia bankruptcy of Enercons as trustee suing on behalf of Montepelmo’s bankrupt estate. Farinacci accordingly notified all Italian creditors of Montepelmo that he intended to appear on their behalf in those proceedings and to file a proof of claim for $17.2 million in'the Enercons proceeding on behalf of Montepelmo and its creditors. The four Italian banks, however, filed their own proofs of claim on September 22, 1983, which ultimately amounted to $7.83 million. Farinacci, therefore, obtained an ex parte Order from the Italian court on October 4, 1983 clarifying that under Italian law, he, as bankruptcy trustee of Montepelmo, had exclusive authority to enforce the rights of Montepelmo and its creditors in the Enercons proceeding. The Order of the Italian bankruptcy court was entered ex parte in accordance with Italian practice.
On October 12, 1983 Farinacci filed this action in the U.S. Bankruptcy Court for the Western District of Virginia seeking a declaratory judgment that he, as trustee of Montepelmo, had exclusive standing to represent Montepelmo and its Italian creditors in the Enercons proceeding, and asking that the court disallow any proofs of claim filed by the four Italian banks against Enercons. Upon cross motions for summary judgment, the bankruptcy court, following a hearing, issued a Memorandum Opinion on May 29, 1984 granting summary judgment for Farinacci. In so ruling, the court applied the doctrine of international comity to the Italian court’s Order appointing Farinacci as bankruptcy trustee of Montepelmo. It held, therefore, that the American bankruptcy court should respect Farinacci’s authority as trustee to act as the exclusive representative of Montepelmo and its Italian creditors in the Enercons proceeding. Upon appeal to the district court, that court affirmed the bankruptcy court’s decision. The four Italian banks have appealed the district court’s Order.
On appeal, the four banks first contend that 11 U.S.C. § 304 (1982) is the exclusive or preferred remedy of a foreign representative who wishes a United States bankruptcy court to cooperate with a foreign court in its administration of a foreign bankrupt’s estate. They assert that Farinacci should have been denied relief since he did not bring his action in the United States bankruptcy court under Section 304. Entitled, “Cases Ancillary to Foreign Proceedings,” Section 304 allows the foreign representative of a foreign bankrupt to bring an ancillary action in a United States bankruptcy court to protect from the claims of creditors the assets of a foreign debtor located in the United States, so that the debtor’s estate can be properly administered in the foreign bankruptcy proceeding. Section 304 enables a foreign representative to accomplish this purpose without the expense of initiating a full-fledged bankruptcy proceeding.
*1472 Although this court has never before considered the application of Section 304 in a situation as that before us, the Second Circuit has and we are persuaded by its analysis and decision in Cunard Steamship Co., Ltd. v. Salen Reefer Services, A.B., 773 F.2d 452 (2d Cir.1985). In Cunard, Salen, a Swedish business entity, filed for bankruptcy in Sweden and the Swedish court appointed an interim administrator of Salen’s affairs and entered an order staying creditor actions against Sal-en. When Cunard later instituted attachment proceedings in a United States district court against Salen’s United States assets, Salen’s administrator moved to dissolve the attachment on principles of comity. The district court granted Salen’s motion and Cunard appealed. The Second Circuit articulated the issue before it as whether, “when a debtor is involved in a foreign bankruptcy proceeding, Section 304 of the Bankruptcy Code is the exclusive remedy for a trustee or representative of the bankrupt who wishes to stay or enjoin creditor actions in the United States.” Id. at 454. The court, in a well-reasoned opinion, found that Section 304 is not an exclusive remedy because the section was not meant to abrogate the doctrine of comity. This conclusion is clearly evident from both the language and legislative history of the section: “The statute is not phrased in mandatory or exclusive terms and the language of the accompanying House and Senate Reports is permissive. For example, both the House and Senate Reports state that ‘the foreign representative may file a petition under this section.’ ” Id. at 455-56 (citing S.Rep. No. 989, 95th Cong.2d Sess. 35, 35 reprinted in 1978 U.S. Code Cong. & Admin. News 5787, 5821; H.Rep. No. 595, 95th Cong.2d Sess. 324-25, reprinted in 1978 U.S. Code Cong. & Admin. News 5963, 6281. (Emphasis added).
An examination of the explanatory notes accompanying the predecessor bill to Section 304 also supports this conclusion. Thus, these notes state:
In proposing the predecessor bill to the Bankruptcy Code, the Commission on the Bankruptcy Laws of the United States, in its explanatory notes accompanying section 4-103 of the proposed bill, the predecessor to section 304, expressly stated: “Nothing in the Act precludes a state or federal non-bankruptcy court from recognizing as a matter of comity at the behest of a foreign trustee a stay or injunction emanating from a foreign court having jurisdiction of the administration of a debtor’s estate.” Report of the Commission on the Bankruptcy Laws of the United States, H.R. Doc. No. 137, 93d Cong., 1st Sess., Part II, 71 (1973). While the Commission’s explanatory notes are not definitive as legislative history, they are useful in determining the drafter’s intent. Since section 4-103 is substantially similar to section 304, and since there is no subsequent indication Congress intended a contrary effect, it may be concluded that section 304 was not considered by Congress to be exclusive. “When as here Congress adds a new remedy ..., where other remedies had been clearly recognized, it would be expected to say so if it meant the new remedy to be exclusive.” Leist v. Simplot, 638 F.2d 283, 313 (2d Cir. 1980), aff'd sub nom. Merrill Lynch, Pierce, Fenner & Smith v. Curran, 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982).
Cunard, 773 F.2d at 456.[1]
We further note that no language in the Bankruptcy Code suggests that a foreign trustee cannot submit a proof of claim in a United States bankruptcy proceeding. Creditors are permitted to file proofs of claim under Section 501(a) and a foreign trustee is within the definition of creditor given in Section 101(9). Hence, we believe that Farinacci need not have brought his claim under Section 304.
The next ground for reversal asserted by the four Italian banks is that the district court erred in extending comity to the Italian court’s Order because the Italian proceedings were unfair to the banks. *1473 The banks erroneously contend that the district court granted comity to the Italian court’s October 4 ex parte Order and that the proceeding failed to satisfy the American notion of due process because the banks received no notice or opportunity to be heard until the time for appeal of the Order had passed. It is true, of course, that in determining whether to apply comity to the Order of a foreign court of competent jurisdiction we must consider our own laws and public policy, as well as the rights of our residents under the laws of the United States. See Cunard, 773 F.2d at 457, citing Hilton v. Guyot, 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895). The Order to which the district court and bankruptcy court extended comity, however, was the original Order of the Italian court in which it first appointed Farinacci trustee of the Montepelmo estate. The Order of October 4 merely clarified the exclusive authority of Farinacci inherent in his appointment. We, therefore, agree with the courts below that the Italian proceedings were sufficiently analogous to our fundamental concepts of justice as to warrant our extension of comity to them.
The final argument raised by the banks is that the district court erred in granting summary judgment without a pri- or evidentiary hearing because disputes exist as to inferences to be drawn from the facts. The banks contend that differing inferences have been drawn concerning the effect of the October 4 Order and the treatment of the banks under Italian law. In Morrison v. Nissan Motor Co., Ltd., 601 F.2d 139 (4th Cir.1979), an anti-trust case concerning the alleged association of an auto manufacturer and certain dealerships to stifle competition in violation of the Sherman Act, this court stated that summary judgment is inappropriate if the parties disagree on the inferences which may reasonably be drawn from the undisputed facts, especially where the case turns on intent and that issue depends upon the credibility of witnesses. That, however, is not the case now before us. The parties provided the bankruptcy court with affidavits containing translations of Italian law, as well as pleadings, depositions, answers to interrogatories, etc. The district court had only to look to the Italian statutes to determine their effect. And again, the October 4 Order seems insignificant in and of itself because it merely clarifies the effect of Farinacci’s earlier appointment as Montepelmo’s trustee in bankruptcy. Moreover, the effect of Italian law on the parties is a question of law rather than fact and, hence, does not require a determination of intent or witness credibility. Thus, the district court did not err in granting summary judgment to Farinacci.
The judgment of the district court is accordingly
AFFIRMED.

. We believe the same analysis applies regardless of whether a proceeding other than under Section 304 is brought in a bankruptcy- court or a non-bankruptcy court.