In re YMB MAGNEX INTERNATION-
AL, INC., Ernst & Young, YBM, Inc.,
as Receiver and Manager of YBM
Magnex International, Inc., Debtor.

No. 98–36044 SR.

United States Bankruptcy Court,
E.D. Pennsylvania.

June 15, 2000.

Daniel K. Astin, Office of the U.S. Trustee, Philadelphia, PA.

Edward M. Toole, Marion M. Quirk, Philadelphia, PA.

John W. Morris, Philadelphia, PA.

Myron M. Bloom, Philadelphia, PA.

James G. Wiles, Leon S. Forman, Blank, Rome, Comisky & McCauley, Philadelphia, PA.

Kara H. Goodchild, Kalimah White, Saul, Ewing, Remick & Saul, Philadelphia, PA.

Peter F.C. Howard, Stikeman, Elliott, Barristers & Solicitors, Toronto, Ontario.

Stephan Matanovic, Morgan, Lewis & Bockius, LLP, Philadelphia, PA.

Steven M. Steingard, Kohn Swift & Graft, PC, Philadelphia, PA.

Gregg R. Melinson, Drinker, Biddle & Reath LLP, Philadelphia, PA.

#### OPINION

STEPHEN RASLAVICH, Bankruptcy Judge.

### *Introduction.*

The above bankruptcy case was commenced as a case ancillary to a foreign proceeding under 11 U.S.C. § 304. Before the Court are four motions, all of which seek identical relief; to wit: modification of a litigation injunction entered at the inception of the case pursuant to 11 U.S.C. § 304(b).[1] The relief sought is opposed in its entirety by the Representative from the foreign proceeding. Partial opposition is also raised by the Plaintiffs in a securities class action which is pending in the United States District Court for the Eastern District of Pennsylvania and in which YBM Magnex International, Inc. ("YBMI") is a party defendant. For the reasons discussed herein, the motions will be granted.

### *Background.*

YBMI was a public company incorporated in Calgary, Alberta Province, Canada in 1994. Its stock was traded on the security exchanges of Canada between 1994 and 1998 and over the counter in the United States. In its public filings, YBMI identified its core business as the manufacture and world wide distribution of custom made, precision designed, industrial magnets. Its international headquarters was

---

1. "Movants" are certain former officers and directors of the Debtor and one of its former accounting firms.

said to be located at 110 Terry Drive, Newtown, Pennsylvania. On May 28, 1998, YBMI was charged in a 1–Count criminal information with a multi-object conspiracy to commit mail and securities fraud in violation of 18 U.S.C. § 371.[2] The Company's demise followed quickly, and on or about December 9, 1998 YBMI was placed into a Receivership by Order of the Court of Queens Bench, Judicial District of Calgary, Action No. 9801–16691. The same order appointed Ernst & Young, YBM, Inc. as Receiver and Manager of the property of YBMI. (The "Receiver") On December 14, 1998, the Receiver filed a petition here under 11 U.S.C. § 304 to commence a case ancillary to the Canadian Receivership. The petition was opposed by certain interested parties however, following hearing on January 28, 1999, the petition was approved by Order dated February 1, 1999. The Court's Order, includes the following passage:

> 2. As a result, the Court HEREBY:
>
> \*     \*     \*     \*     \*     \*
>
> b. Enjoins the commencement or continuation of any judicial quasi-judicial, administrative or regulatory action or any arbitration proceeding or process whatsoever (including any discovery in connection therewith) involving YBMI, its U.S. subsidiaries, its present and former officers and directors, or any of YBMI property or any proceeds thereof located in the United States, including but not limited to the property of its U.S. subsidiaries or any proceeds thereof.

As seen, the referenced Order enjoined litigation not only against YBMI, but against its officers and directors as well. By that time, however, the first of what became five securities class actions had already been filed here. These suits, which name a total of 11 defendants, have been consolidated in the United States

District Court for the Eastern District of Pennsylvania in a case entitled, *John Paraschos, Sheldon Kapustin, Ralph A. Sutton, Stephen K. Leff, and Caisse De Depot Et Placement Du Quebec, on behalf of themselves and all others similarly situated v. YBM Magnex International, Inc., Deloitte & Touche, L.L.P., Parente, Randolph, Orlando, Carey & Associates, Jacob G. Bogatin, Harry W. Antes, R. Owen Mitchell, Frank Greenwald, David R. Peterson, Daniel E. Gatti, James J. Held and Guy R. Scala* (No. 98 CV 6444) (The "American Class Action"). The American Class Action Defendants include the former officers and directors of YBMI. By Consent Order of March 1, 1999, the litigation stay as against these defendants was lifted, although the litigation stay as against YBMI remained in place, as follows:

> 1. The Order Approving Petition to Commence Case Ancillary to a Foreign Proceeding dated February 1, 1999 (Docket No. 13) is hereby AMENDED as follows:
>
> a. The provision contained in Paragraph 2b enjoining the commencement or continuation of any judicial, quasi-judicial administrative or regulatory action or any arbitration proceeding or process whatsoever (including any discovery in connection therewith) involving present and former officers and directors of YBMI and its U.S. subsidiaries is DISSOLVED.
>
> b. The provision enjoining proceedings against YBMI, together with its subsidiaries as set forth therein is not modified or otherwise affected.
>
> 2. The February 1, 1999 Order of this Court shall not be construed to have adjudicated substantive issues per-

---

**2.** On June 7, 1999, YBMI, through its Receiver, pled guilty to the criminal information in the United States District Court for the Eastern District of Pennsylvania. (*United States of America v. YBM Magnex, International, Inc.*, Criminal # 99–298, E.D.Pa. Van Antwerpen, J.)

taining to directors' and officers' insurance which may be in place.

3. Documents of YBMI located in the United States of America, or any of its territories, will be preserved *in toto*, unless ordered otherwise by the Court of Queen's Bench of Alberta, before whom the Receivership proceeding is pending, or by the U.S. District Court for the Eastern District of Pennsylvania, before whom the Securities Class Actions are pending.

4. All other provisions of the February 1, 1999 Order remain in effect as set forth therein.

In addition to the American Class Action, two securities class actions have also been separately commenced in Canada. ("The Canadian Class Actions")[3] YBMI is not presently a party in The Canadian Class Actions.

At some point, all of the present Movants filed motions to dismiss The American Class Action. In an Opinion and Order dated March 28, 2000 the District Court (Newcomer, S.J.) denied these motions. On April 6, 2000, the Movants filed the present set of motions wherein they seek further modification of this Court's litigation injunction so as to permit their prosecution of cross claims for contribution and indemnity against YBMI. The Movants argue that the policy reasons which underlay Bankruptcy Code § 304, and which arguably militated in favor of the grant of a litigation injunction at the inception of this ancillary proceeding, no longer exist. In their papers, the Movants make several discrete points in support of their position. Generally, they assert that, in the fifteen months that the present injunction has been in place, the situation has changed dramatically. Specifically, Movants contend, and it appears undisputed, that YBMI has discontinued its business, and its assets, save for causes of action, have been liquidated. The Movants further stress that in the Canadian Receivership proceeding itself, the outside auditors and underwriters of YBMI sought, and were unopposed by the Receiver in obtaining, permission from the Court of Queen's Bench to litigate their claims for contribution and indemnity against YBMI, not through the proof of claim program established in the Canadian Receivership, but in the Courts of Ontario, either through the commencement of a new civil action against YBMI or, as would seem more likely, through YBMI's joinder in the pending Canadian Class Actions as a third party defendant. The Movants argue that lifting the litigation injunction to permit trial of their cross claims against YBMI in The American Class Action, where the events giving rise to the same have been placed in issue, will merely be following the lead of the Canadian Receivership Court. Moreover, they contend that the contribution and indemnity claims they seek to assert arise under principals of Pennsylvania's common law of tort, such that they can only be adjudicated in a law suit wherein YBMI is a party defendant along with them. They posit, therefore, that their substantive rights to contribution and indemnity may be irreparably harmed if they are forced to assert such claims in the context of the Canadian Receivership Proof of Claim process. Finally, the Movants cite the case management Order entered in The American Class Action by Judge Newcomer on May 17, 2000, along with an affidavit from David F. Bell, a Barrister and Solicitor associated with an Ontario firm which is Canadian counsel for Movant, Parente, Randolph, Orlando,

---

**3.** *Roger Mondor and Amit M. Karia v. Fisherman, et al.,* (Ontario Court, General Division) File No. 98 GD 45452);

*Royal Trust Corporation of Canada, in its capacity as Trustee of the CC & L Dedicated Enterprise Fund, Royal Trust corporation of Canada, in its capacity as Trustee of the CC &*

*L Balanced Canadian Equity Fund. Connor Clark & Lunn Investment Management Ltd. and Her Majesty the Queen in Right of the Province of British Columbia v. Fisherman, et al.,* (Ontario Court, General Division) File No. 00 CV 186800.

Carey and Assoc. They maintain that together these two documents demonstrate that The American Class Action will reach trial much earlier than the Canadian Class Actions, a factor they contend should be accorded significance.

The Receiver's response to all of the foregoing is straightforward and doctrinal. The Receiver does not so much answer the arguments raised by the Movants as demur. The Receiver cites the well known policy aims designed to be served through an ancillary proceeding initiated under 11 U.S.C. § 304, along with the equally well known principals of comity and judicial economy. These, the Receiver suggests with little added explanation, continue to militate in favor of an injunction litigation against YBMI. In particular, the Receiver directs attention to the proof of claim program in place within the confines of the Canadian Receivership. This program, says the Receiver, provides a convenient and fully adequate mechanism for the equitable treatment of claims against YBMI, including those which the Movants seek leave to prosecute. The Receiver warns that permitting litigation of the Movants claims against YMBI here could produce results inconsistent with those reached in the Canadian Class Actions, or in two other non-class actions pending in Canada in which YBMI is a party.[4] Finally, the Receiver argues that the question of whether the Movants should be granted the permission they seek should be presented in the first instance to the Canadian Receivership Court, which Court, says the Receiver, is in the best position to determine whether granting the Movants the permission they seek will disturb the orderly administration of the Receivership. Having reviewed the written submissions of the parties, and considered their arguments as raised in pleadings and at oral argument, the Court finds that although there is a degree of persuasion to the Receiver's position, the Movants have the better part of this argument.

*Discussion.*

The parties disagree little, if at all, on the statutory purposes which underpin Bankruptcy Code § 304. They are synopsized well in *In re Petition of Bird*, 222 B.R. 229 (Bankr.S.D.N.Y.1998); (Gallet, B.J.), a decision upon which the Receiver relies, and which indeed has relevance, given that it involved a request with parallels to that made herein. In *Bird*, the Bankruptcy Court stated:

> ... Section 304 of the Code provides a mechanism for United States courts to aid foreign bankruptcy proceedings and accommodate the extraterritorial effect of these proceedings within the United States. *Universal Casualty & Surety Co., Ltd. v. Gee (In re Gee)*, 53 B.R. 891, 896 (Bankr.S.D.N.Y.1985). The purpose of a filing under § 304 is to prevent piecemeal distribution of assets in the United States by means of legal proceedings initiated in domestic courts by local creditors. *In re Rubin*, 160 B.R. 269, 274 (Bankr.S.D.N.Y.1993) (citing *In re Koreag, Controle et Revision S.A.*, 961 F.2d 341, 348 (2d Cir.), cert. denied, 506 U.S. 865, 113 S.Ct. 188, 121 L.Ed.2d 132 (1992)). To administer assets in the United States and prevent local creditors from dismembering assets located here, the representative of a foreign debtor may commence a proceeding pursuant to § 304 and need not file a petition for relief under chapters 7 or 11. *Cunard S.S. Co. Ltd. v. Salen Reefer Servs. AB*, 773 F.2d 452, 454–55 (2d Cir.1985). This remedy is intended to be broad and flexible. *Id.* at 455. In addition, " 'a 304 case is a limited one,

---

**4.** *YBM Magnex International Inc., by its Receiver and Manager Ernst & Young YBM Inc. v. Jacob Bogatin et al.* (Superior Court of Justice, Ontario, Commercial Court File No. 99–CL–3424) Statement of Claim dated July 2, 1999.

*In the Matter of The Securities Act R.S.O. 1990, c.S.5, as amended and YBM Magnex International Inc., et al.*, Ontario Securities Commission.

designed to function in aid of a proceeding pending in a foreign court.'" *In re Shavit*, 197 B.R. 763, 766 (Bankr. S.D.N.Y.1996) (quoting *In re Gee*, 53 B.R. at 896). Indeed, the foreign court which presides over the original proceeding is in the best position to assess where and when claims should be liquidated so as to conserve estate resources and maximize the assets available for distribution. See *In re Gercke*, 122 B.R. 621 (Bankr.D.C.1991).

Pursuant to § 304(b), the court has the power to enjoin the commencement or continuation of any action against a debtor in a foreign proceeding or any property involved in that proceeding. The injunctive relief available under § 304(b) is "not unlike the injunction which is automatic in a chapter 7 or 11 case pursuant to Section 362 of the Code." *In re Banco Nacional de Obras y Servicios Publicos, S.N.C.*, 91 B.R. 661, 664 (Bankr.S.D.N.Y.1988). Section 304(b) also provides that the court may order additional relief as it deems appropriate. This language reflects Congress's intent to provide maximum flexibility to confront the multitude of complex and unforeseen problems associated with international insolvencies. *In re Gee*, 53 B.R. at 896–97. It allows the court *234 to grant relief in a "near blank check fashion." *In re Culmer*, 25 B.R. 621, 624 (Bankr.S.D.N.Y.1982). As a result, a court may modify a preliminary injunction under § 304 where the modification is necessary to protect the interests of the estate. See *In re Treco*, 205 B.R. 358, 361 (S.D.N.Y.1997)

However, § 304 is not intended to be an exclusive remedy for a foreign debtor. The statute is not phrased in mandatory or exclusive terms and Congress appears to have so intended. See *Cunard S.S. Co. Ltd.*, 773 F.2d at 455–56 (citing S.Rep. No. 989, 95th Cong., 2d Sess. 35 and H. Rep. No. 595, 95th Cong., 2d Sess. 324, U.S.Code Cong. & Admin.News 1978, p. 5787) ("the foreign representative may file a petition under this section")......

*Bird's* observation that the foreign Court which presides over the original proceeding is in the best position to assess where and when claims against a debtor should be liquidated has much to recommend it, but absolute deferral in all cases, irrespective of the totality of the circumstances, would certainly seem unwarranted. As *Collier* notes, the legislative history of § 304 suggests a different standard:

> "Section 304(c) requires the court to consider several factors in determining what relief, if any, to grant. The court is to be guided by what will best assure an economical and expeditious administration of the estate, consistent with just treatment of all creditors and equity security holders; protection of local creditors and equity security holders against prejudice and inconvenience in processing claims and interest in the foreign proceeding; prevention of preferential or fraudulent disposition of property of the estate; distribution of the proceeds of the estate substantially in conformity with the distribution provisions of the bankruptcy code; and, if the debtor is an individual, the provision of an opportunity for a fresh start. *These guidelines are designed to give the court the maximum flexibility in handling ancillary cases. Principles of international comity and respect for the judgments and laws of other nations suggest that the court be permitted to make the appropriate orders under all of the circumstances of each case, rather than being provided with inflexible rules.*" (emphasis added).

*See: S. Rep.* 95–989, 95th Cong., 2d Sess. 35 (1978), U.S.Code Cong. & Admin.News 1978, at p. 5821, *reprinted in* App. Pt., 4(e)(i) *infra.* 2 COLLIER ON BANKRUPTCY ¶ 304.02 [ (15th ed. rev.1999) ]. Moreover, as Collier notes, the various policies which inform a Court's decision to grant or continue a § 304(c) injunction are themselves

in tension, with some factors weighing in favor of local administration (e.g., protection of claim holders in the United States against prejudice and inconvenience; United States' interest in the application of its own laws), and others weighing in favor of unitary administration in a foreign forum (e.g. comity prevention of piecemeal dismemberment of estate) *id.* at 304.08. It thus seems abundantly clear that the Court is obliged to evaluate § 304(c) injunctions on a case by case basis and to eschew any request for the mechanistic grant or renewal of same.

In *Bird,* the Bankruptcy Court denied a request to modify its earlier litigation injunction, because the issue which would then have proceeded to suits against the debtor, i.e., the existence of a novation of liability as between two insurance companies, would have to be separately tried in the context of each underlying policy of insurance in which the novation defense was implicated. The Court observed that there were at least 28 such lawsuits already pending, and that the potential universe of such policies could be as many as 82,000. Deferral of the injunction question in that instance to the English Courts where the foreign proceeding was pending was no doubt well advised. The Court also notes the subsequent decision in the *Bird* case, reported at *In re Bird,* 229 B.R. 90 (Bankr.S.D.N.Y.1999); (Brozman, B.J.), wherein the Bankruptcy Court concluded that counterclaims asserted by the Defendant in an adversary proceeding commenced in the pending ancillary case also violated that Court's litigation injunction and again deferred, in that instance on the basis of comity, to the English forum with respect to the question of whether the assertion of such claims would unduly interfere with the liquidation proceedings before it. That decision, too, may have been well grounded based on the facts of the case. However, neither *Bird* decision, if they may even be read to espouse such a position, which this Court doubts, convinces this Court that deferral to the home Court of an international insolvency case is

mandatory on all questions and in all instances. If it were, the statute would be differently worded. Whatever the outcomes reached in *Bird,* the markedly different facts present herein support a different result.

■ The present request is not one which portends a flood of litigation. Quite to the contrary, that possibility is foreclosed, as the securities lawsuit here is being prosecuted as a class action. The liability of YBMI with respect to its former officers and directors' claims for contributions and indemnity on the causes of action stated in The American Class Action must, and eventually will, be litigated somewhere; the question is simply where and when. Not even the Receiver disputes that. On this point, the Movants assert that the Canadian Receivership Court has already "spoken." In this respect, the Canadian Court's Order of March 25, 2000 contains the following passages:

AND UPON HEARING the submissions of counsel for the Receiver, counsel for the lead underwriters, Griffiths McBurney Partners and National Bank Financial Group, counsel for Canacord Capital Corporation, counsel for Parente, Randolph, Orlando, Carey & Assoc. ("Parent"), counsel for the Plaintiff's Executive Committee in the U.S. Class Action, counsel for the representative plaintiffs in the Ontario Prospectus Class Action, and counsel for the representative plaintiffs in the Ontario General Class Action, and no one else on the Service List appearing although duly notified.

IT IS HEREBY ORDERED THAT:

... 4) By Consent of all parties who appeared, paragraphs 1 and 2 of the February 1 Order shall be varied and amended as follows:

(a) Paragraph 1 of the February 1 Order shall be amended by adding the following sentence at the end of paragraph 1:

*Notwithstanding the foregoing, the Underwriters and Parente, Randolph, Orlando, Carey & Assoc. and Deloitte & Touche LLP (the "Auditors") shall be exempt from the proof of claims process except for the requirement to file a Proof of Claim and Dispute Notice, if necessary.*

(b) Paragraph 2 of the February 1 Order shall be amended by adding the following sentence at the end of paragraph 2:

*Notwithstanding the foregoing, the validity and amount of any claim for contribution of indemnity by the Underwriters and the Auditors shall be determined by the Ontario Courts. . . .*

The Movants contend that the above indicates the Receivership Court's decision not to hear contribution and indemnity claims against YBMI arising out of the pending securities class actions, much in the way Bankruptcy Courts sometimes abstain from hearing matters where a more logical or practical alternative forum exists. This certainly seems to be a reasonable inference to draw from the passage in question, although the language cited above is not entirely free from doubt. In the first place, only one of the present Movants, Parent, Randolph, Orlando, Carey & Assoc., sought and obtained the relief entered by the Receivership Court on March 25, 2000. Second, that Court's Order does not distinguish as between the American and Canadian Class Actions. It could arguably be read to cover both, or it might be interpreted to apply only to the Canadian lawsuits. The Movants minimize this and respond that had the former officers and directors of YBMI presented themselves before the Receivership court with a request similar to that made by YBMI's auditors and underwriters, they would have obtained similar relief. Further, the Movants clearly interpret the Receivership Court's Order as speaking only to the Canadian Class Actions in its reference to a determination by Ontario Courts. They infer, in turn, that the Receivership Court would similarly defer to the forum where the American Class Action is pending for the resolution of any contribution and indemnity claims arising out of the causes of action stated therein.

In seemingly arguing in support of a more restrictive interpretation of the Receivership Court's Order of March 25, 2000, the Receiver appears to imply, albeit without explanation, that the Order was more strategically crafted by the Receivership Court, and reflects a determination by that tribunal that only the claims of auditors and underwriters are to be excepted from the Canadian proof of claim program, and that *all* claims by those parties are to be tried in Canada. The Receiver would appear to argue, in the alternative, that even if its interpretation of the Court's March 25, 2000 Order is incorrect, the proper course would be to present the question to the Receivership Court for clarification.

To this Court, it is at least a curiosity that the present question, being so obviously related to matters which the Receivership Court considered in the course of issuing its March 25, 2000 Order, was not more fully aired so as to eliminate uncertainties. Other things being equal, this Court might agree with the Receiver's presumed alternative argument; namely, that the parties seek some clarification in Canada. However, under present circumstances the Court considers such an alternative argument unsatisfactory. Even if the Court were to assume that the Canadian Court's March 25, 2000 Order reflects an intention or desire by that Court that such contribution and indemnity claims as attend the American Class Action should be tried in Canadian Courts, an assumption this Court views as highly improbable, it seems clear that the principals which underlay Bankruptcy Code § 304, including the principals of international comity and judicial economy, would weigh strongly against permitting any such result. The

rationale for this conclusion may be gleaned, in part, from the aforesaid March 28, 2000 opinion of Judge Newcomer, wherein he denied dismissal motions which had been interposed on grounds somewhat analogous to those raised herein.

In declining to dismiss the American Class Action, Judge Newcomer acknowledged that Canadian Courts serve as a reliable alternative to American Courts and, indeed, can be trusted to be orderly, fair and not detrimental to this Country's interests. However, he found the reasons for maintaining jurisdiction of the American Class Action in the United States to be more compelling. Specifically, he stressed that in the American Class Action the causes of action were stated under U.S. Securities law, not Canadian law, and that the pending cases in the Canadian Courts involved different legal issues. That fact warrants emphasis in this setting as well. The present Movants' claims for contribution and indemnity in the American Class Action are inextricably interwoven with the causes of action which the American Class Action Plaintiffs assert against them under U.S. Securities laws. It is almost inconceivable to imagine, therefore, that it would be more practical, or that it would be more efficient or less expensive, to bifurcate those contribution and indemnity claims for a separate trial in Canada, leaving aside the obvious specter of inconsistent results were the claims to be bifurcated. Moreover, the Movants make plain that they seek no permission to reach assets under the protection of the Canadian Receivership at this time. They seek only the right to litigate the issue of liability on their claims for contribution and indemnity against YBMI, as the claims predicate thereto are litigated against them in the American Class Action. Their eventual recovery, if any, would, they agree, be processed via the Canadian proof of claim program.

■ The Movants make a sound argument. Given the realities of the situation, and given that it is the Receiver who is asking for the continuation of the present 15 month old injunction, the Court finds that it was incumbent on the Receiver to have come forward with something more than broad generalities or platitudes in support of the request that this Court either deny the Movants' relief entirely, or require the Movants to present themselves first to the Canadian Receivership Court on the subject. This the Receiver has not done. The Receiver seemingly takes no issue with the proposition that the YBMI liquidation is essentially complete, except for the resolution of pending causes of action and the determination of claims against the Estate. The Receiver concedes, as he must, that the Canadian Receivership Court, with the consent of the Receiver, has itself elected not to hear the contribution and indemnity claims which have been brought to its attention. The Receiver, in turn, offers no persuasive argument as to why the litigation of the subject contribution and indemnity claims is not better, in fact, singularly well suited for adjudication in the American Class Action, where the alleged violations of U.S. Securities Law which give rise to such claims have already been placed in issue, nor does the Receiver treat at all with apprehensions the Movants expressed concerning risks to their contribution and indemnity rights should they be forced to litigate them elsewhere. Finally, the Receiver makes no response to the assertions that the American Class Action will go to trial much earlier than the Canadian Class Actions. In short, the Receiver has done little to undermine the arguments made by the Movants, many of which have obvious and substantial validity. As Collier notes, even when factors exist from which a court might, on the basis of comity, continue a domestic injunction in force pending developments in a foreign forum, no reflexive deferral should follow. Rather, all factors discussed in 11 U.S.C. § 304(c) should be evaluated and given even weight. 2 COLLIER ON BANKRUPTCY ¶ 304.08 [ (15th ed. rev.1999) ] citing *Underwood v. Hilliard (In re Rimsat, Ltd.)* 98 F.3d 956, 963 (7th

Cir.1996). ("Comity is a doctrine of adjustment, not a mandate for inaction. In the case of parallel inconsistent proceedings in domestic and foreign courts, one must yield; there is no presumption that it is the domestic; and the bankruptcy judge did not abuse his discretion in deciding that the [foreign] receivership proceeding ... should be the one [to yield].")

The Receiver, it would seem, relies entirely on a presumption that ordinarily operates in his favor where the question, *sub judice* arises. Unless one considers such presumption to be irrefutable, however, the proper outcome on the present record is virtually unassailable. Accepting the Receiver's argument would only sustain what the Court considers to be a flawed legal theory, or serve to elevate form over substance. The Court therefore declines to uphold the Receiver's objection to the present group of motions out of hand, or to mechanically defer the present question to the home court of this transnational insolvency. Though that may typically be the preferred avenue, on this record it is not. Because denial of the motions would only create a wasteful and unnecessary obstacle to the economic and expeditious administration of the Estate, the objections thereto will be overruled and the motions will be granted.[5]

**5.** As noted, *supra,* the American Class Actions Plaintiffs also interposed objection to the relief sought by the Movants. Those Plaintiffs urged the Court to deny the Movants' requests, without prejudice to their right to renew them at some later date when the passage of events might render the Movants' requests more propitious to evaluate. This argument is somewhat vague and unhelpful. For the reasons already discussed the Court has concluded that the Movants' request has merit and should be granted now. That decision will stand. The American Class Action Plaintiffs supported the Movants to the extent that they sought relief to take discovery of YBMI documents in the possession custody, or control of the Receiver. The Receiver, however, also opposed the discovery aspect of the Movants' request, arguing that a discovery protocol in place in the Canadian Receivership adequately responded to the Movants' needs. In view of the disposition reached herein, any discovery question raised will now fall under the supervision of the District Court. This Court, therefore, need not and does not reach that aspect of the parties' dispute.